**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

SS&C TECHNOLOGIES HOLDINGS, INC.,
and ADVENT SOFTWARE INC.,

                Plaintiffs,

        v.

D. E. SHAW & CO., L.P.,

                Defendant.

Civil Case No. 23-9158

Hon. Timothy M. Reif

## MEMORANDUM OF LAW IN SUPPORT OF D. E. SHAW & CO., L.P.'S MOTION TO DISMISS THE COMPLAINT

<u>**TABLE OF CONTENTS**</u>

<u>**Pages**</u>

I.    INTRODUCTION ...........................................................................................1

II.   FACTUAL BACKGROUND:  SS&C HAS KNOWN ABOUT THE ACCUSED TECHNOLOGY AND ALLEGED MISCONDUCT FOR OVER *NINE* YEARS.............3

III.  ARGUMENT .................................................................................................4

     A.     SS&C's Claims Are Untimely And Should Be Dismissed With Prejudice Because, As SS&C Concedes, It Has Been Aware Of DESCO's Innovations And Plans For Arcesium Since 2015. ....................................................5

           1.     SS&C's Trade Secret Claims Accrued No Later Than 2015.......................6

           2.     SS&C's Breach Of Contract Claims Are Time Barred Because They Arise From Conduct That Occurred More Than Six Years Ago. ...............8

     B.     Because SS&C's Action Against DESCO Is Duplicative Of Its Action Against Arcesium, It Should Be Dismissed With Prejudice....................................9

           1.     SS&C Concedes That Its Claims Against DESCO Arise From— And Necessitate Discovery Of—The Very Same Facts That It Has Been Litigating Against Arcesium For Over 18 Months..........................10

           2.     By Filing This Action Against DESCO, SS&C Attempts To Circumvent The Court's Scheduling Order In The *Arcesium* Action And To Avoid The Consequences Of Its Own Delay...............................12

     C.     SS&C's Trade Secret Claims Are Legally Deficient Because SS&C Fails to Plead Sufficient Facts Supporting The Existence Of A Trade Secret. .................14

           1.     Certain Of SS&C's Asserted Trade Secrets Are Not Sufficiently Identified Because They Are Merely Vaguely Defined Geneva Functionalities. ..........................................................................................15

           2.     Certain Of SS&C's Asserted Trade Secrets Are Not Sufficiently Identified Because The Information Is Indistinguishable From General Knowledge. ..................................................................................16

           3.     Certain Of SS&C's Asserted Trade Secrets Are Not Secret Because SS&C Failed To Maintain Their Secrecy. .................................................19

IV.  CONCLUSION...........................................................................................21

## TABLE OF AUTHORITIES

**Pages**

## Cases

*Adams v. Jacobs,*
    950 F.2d 89 (2d Cir. 1991).................................................................. 10, 14

*Alpert's Newspaper Delivery Inc. v. New York Times Co.,*
    876 F.2d 266 (2d Cir. 1989)......................................................................... 11

*Art & Cook. Inc. v. Haber,*
    No. 17-cv-1634, 2017 WL 4443549 (E.D.N.Y. Oct. 3, 2017) ........................ 16

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009).......................................................................................... 5

*B&P Littleford, LLC v. Prescott Mach., LLC,*
    Nos. 20-1449, 20-1451, 2021 WL 3732313 (6th Cir. Aug. 24, 2021) .............. 8

*Barclay v. Lowe,*
    131 F. App'x 778 (2d Cir. 2005) .............................................................. 11, 13

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).......................................................................................... 5

*Branded Apparel Grp. LLC v. Muthart,*
    No. 17 Civ 5956, 2018 WL 4308545  (S.D.N.Y. Sept. 10, 2018)........ 5, 13, 14, 15

*Broker Genius, Inc. v. Zalta,*
    280 F. Supp. 3d 495 (S.D.N.Y. 2017)....................................................... 17, 22

*Catalyst Advisors, L.P. v. Catalyst Advisors Invs. Glob. Inc.,*
    602 F. Supp. 3d 663 (S.D.N.Y. 2022)............................................................. 16

*Curtis v. Citibank, N.A.,*
    226 F.3d 133 (2d Cir. 2000)........................................................ 10, 11, 14, 15

*DiGennaro v. Whitehair,*
    467 F. App'x 42 (2d Cir. 2012) ................................................................ passim

*DiGennaro v. Whitehair,*
    No. 9-CV-6551, 2010 WL 4116741 (W.D.N.Y. Oct. 19, 2010) ..................... 10

*Dish Network, L.L.C. v. Am Broad. Cos.*,
 No. 12 Civ. 4155, 2012 WL 2719161 (S.D.N.Y. July 9, 2012) ...................................... 14

*Ellul v. Congregation of Christian Bros.*,
 774 F.3d 791 (2d Cir. 2014) ............................................................................................ 6

*Elsevier Inc. v. Dr. Evidence, LLC*,
 No. 17-cv-5540, 2018 WL 557906 (S.D.N.Y. Jan. 23, 2018) ......................... 5, 17, 18, 20

*Espire Ads LLC v. TAPP Influencers Corp.*,
 655 F. Supp. 3d 223 (S.D.N.Y. 2023) ............................................................................ 7

*Houser v. Feldman*,
 569 F. Supp. 3d 216 (E.D. Pa. 2021) ............................................................................ 8

*Jemmott v. Metro. Transit Auth.*,
 No. 13-CV-2665, 2014 WL 2120357 (E.D.N.Y. May 21, 2014) ................................... 14

*Jobscience, Inc. v. CVPartners, Inc.*,
 No. C 13-4519, 2014 WL 852477 (N.D. Cal. Feb. 28, 2014) ........................................ 16

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
 342 U.S. 180 (1952) ........................................................................................................ 10

*Lawrence v. NYC Med. Prac.*,
 No. 18-cv-8649, 2019 WL 4194576 (S.D.N.Y. Sept. 3, 2019) ...................................... 23

*Lehman v. Dow Jones & Co.*,
 783 F.2d 285 (2d Cir. 1986) ............................................................................................ 17

*LiveIntent, Inc. v. Naples*,
 293 F. Supp. 3d 433 (S.D.N.Y. 2018) ............................................................................ 9

*Lopez v. Ferguson*,
 361 F. App'x 225 (2d Cir. 2010) .................................................................................... 11

*Mallet & Co. v. Lacayo*,
 16 F.4th 364 (3d Cir. 2021) ............................................................................................ 19

*Morency v. Vill. of Lynbrook*,
 1 F. Supp. 3d 58 (S.D.N.Y. 2014) .............................................................................. 14, 15

*My Mavens, LLC v. Grubhub, Inc.*,
No. 20 Civ. 4657, 2023 WL 5237519 (S.D.N.Y. Aug. 14, 2023) ....................... 5, 7, 8, 16

*Oakwood Labs. LLC v. Thanoo*,
999 F.3d 892 (3d Cir. 2011) .................................................................................. 16, 19

*Oliver v. Am. Express Co.*,
No. 19-CV-566, 2023 WL 4471937 (E.D.N.Y. July 11, 2023) ...................................... 15

*RVC Floor Decor, Ltd. v. Floor & Decor Outlets of Am., Inc.*,
No. 19-CV-4894, 2020 WL 5709180 (E.D.N.Y. Sept. 24, 2020) ................................... 14

*Structured Cap. Sols., LLC v. Commerzbank AG*,
177 F. Supp. 3d 816 (S.D.N.Y. 2016) ......................................................................... 22

*Turret Labs USA, Inc. v. CargoSprint, LLC*,
No. 19-CV-6793, 2021 WL 535217 (E.D.N.Y. Feb. 12, 2021) ...................................... 21

*Volpe v. Am. Language Commc'n Ctr., Inc.*,
200 F. Supp. 3d 428 (S.D.N.Y. 2016) ............................................................................ 3

*Wallace v. NYC Dep't Corr.*,
112 F. App'x 794 (2d Cir. 2004) .................................................................................... 6

*Walton v. Eaton Corp.*,
563 F.2d 66 (3d Cir. 1977) ........................................................................................... 15

*Zabit v. Brandometry, LLC*,
540 F. Supp. 3d 412 (S.D.N.Y. 2021) ......................................................................... 16

*Zirvi v. Flatley*,
433 F. Supp. 3d 448 (S.D.N.Y. 2020) .................................................................... 6, 8, 9

## Statutes

18 U.S.C. § 1836 ............................................................................................... 1, 5, 6, 7

N.Y. C.P.L.R. § 213 .................................................................................................. 5, 8

## Rules

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 1

# TABLE OF AUTHORITIES (cont'd)

**Pages**

Fed. R. Civ. P. 15(a)(2)...................................................................................................... 2

Fed. R. Civ. P. 16(b)(4)...................................................................................................... 2

## I.    INTRODUCTION

D. E. Shaw & Co., L.P. ("DESCO") respectfully submits this memorandum in support of its motion to dismiss with prejudice the Complaint, ECF No. 1 ("Compl."), brought by SS&C Technologies Holdings, Inc. and Advent Software, Inc. (together, "SS&C" or "Plaintiffs"), pursuant to Federal Rule of Civil Procedure 12(b)(6) and the rule against duplicative litigation.

SS&C's claims against DESCO for federal trade secret misappropriation under 18 U.S.C. § 1836, state trade secret misappropriation under New York common law, and breach of contract are afterthoughts.  Despite knowing about the alleged misconduct that supposedly forms the basis of its claims for years, SS&C chose to pursue claims against a different company—Arcesium LLC ("Arcesium").  *SS&C Techs. Holdings, Inc. v. Arcesium LLC*, No. 1:22-cv-2009-TMR-OTW (S.D.N.Y.) (hereinafter *Arcesium*).  SS&C then waited more than 18 months after filing the *Arcesium* action, and after the deadline for amending its complaint in that case had long since passed to file this case against DESCO.  SS&C's long delayed and duplicative claims against DESCO should be dismissed for multiple reasons.

*First*, all of SS&C's claims against DESCO are untimely.  SS&C waited more than ***nine*** years after learning of the accused technology and the alleged misconduct before it brought its claims against DESCO.  Because SS&C's delay renders its claims barred under the relevant three- and six-year statutes of limitations, the Court should dismiss SS&C's claims with prejudice.

*Second*, SS&C's claims against DESCO are duplicative of its claims in the *Arcesium* action.  Despite its express admission that the actions against DESCO and Arcesium involve substantially overlapping, if not identical, legal issues and fact patterns against defendants in privity, *see, e.g.*, ECF No. 20-1 at 1, SS&C chose not to bring claims against DESCO in the *Arcesium* action.  Rather, SS&C waited nearly a year and a half after the May 20, 2022 deadline

to amend had passed in the *Arcesium* action to impermissibly pursue this separate, duplicative action against DESCO.[1]  SS&C's action against DESCO appears to be an attempt to circumvent the requirements of Federal Rules of Civil Procedure 15(a)(2) and 16(b)(4) and the Court's scheduling order in the *Arcesium* action.  Accordingly, the Court should dismiss SS&C's claims with prejudice pursuant to the rule against duplicative litigation and the court's inherent authority to administer its docket.

*Third*, SS&C's trade secret misappropriation claims are legally deficient because SS&C fails to plead sufficient facts to establish an actionable trade secret.  Notwithstanding the fact that SS&C has spent the last year and a half litigating what it contends are the very same alleged trade secrets in the *Arcesium* action, *see* ECF No. 20-1 at 1 (maintaining that "the cases involve a concerted effort by DESCO and Arcesium to steal the same trade secrets from the same plaintiff for the same purpose"), SS&C fails to adequately describe the information it claims constitutes a protectable trade secret.  Instead, SS&C adopts a "kitchen sink" approach, alleging general categories of information, for example, "proprietary portfolio accounting functions" and "manag[ing] a broad range of complex asset classes," Compl. ¶¶ 27, 33, are trade secrets.  Because SS&C's allegations lack any specificity as to the trade secrets it alleges have been misappropriated, they cannot suffice to provide DESCO—or the Court—the requisite notice as to what nonpublic information SS&C contends is protectable.

In short, the Court should dismiss SS&C's Complaint in its entirety with prejudice.

---

[1] SS&C's subsequent efforts to merge this action with the *Arcesium* action, *see, e.g.*, ECF No. 17 at 1 (moving to consolidate the two "actions and to file a consolidated complaint naming [DESCO] and Arcesium . . . as *co-defendants*" (emphasis added)), further exemplify SS&C's attempt to circumvent the Court's long-since-passed deadline to amend in the *Arcesium* action.

## II. FACTUAL BACKGROUND: SS&C HAS KNOWN ABOUT THE ACCUSED TECHNOLOGY AND ALLEGED MISCONDUCT FOR OVER *NINE* YEARS.

As explained on DESCO's website, after the 2008 financial crisis, DESCO and other hedge funds endeavored to increase visibility into internal trade activity. Ex. A at 1; *see Volpe v. Am. Language Commc'n Ctr., Inc.*, 200 F. Supp. 3d 428, 430–31 (S.D.N.Y. 2016) (taking judicial notice of publicly available information on party's website). That proved difficult, however, because it required coordination between disparate software packages that were not designed to communicate with one another. Ex. A at 1. As such, in 2010, DESCO began dedicating significant resources to develop a unified solution. *Id.* at 2. By 2013, DESCO had built a unique solution that could support all aspects of its internal post-trade lifecycle, including trade capture, asset servicing, collateral management, pricing related services and portfolio data warehousing. Compl. ¶ 51. And by 2014, DESCO recognized the commercial potential of its proprietary solution and decided to form a separate company—what would eventually become Arcesium—that could sell this technology to other companies. *Id.* ¶¶ 51, 54.

Before founding Arcesium, DESCO approached SS&C[2] about a proposed arrangement that would authorize a future DESCO-founded company (i.e., Arcesium) to offer SS&C's Geneva accounting software ("Geneva") alongside DESCO's solution. *See Arcesium LLC v. Advent Software, Inc.*, No. 20-cv-4389, ECF No. 23, ¶ 12 (hereinafter *SS&C Antitrust*). Such an arrangement "was a win-win relationship: [SS&C] would gain sales of Geneva without marketing costs, and Arcesium could provide its customers a one-stop shop for their Post-Trade Solutions needs." *Id.* Accordingly, the parties came to an agreement, and in 2015, the Arcesium spin-out

---

[2] In 2003, DESCO licensed the Geneva software from Advent Software, Inc. ("Advent"), its original owner and licensor. Compl. ¶ 25. In 2015, SS&C acquired Advent along with its Geneva software. *Id.* ¶ 20. For the purposes of this motion, we refer to Advent and SS&C together as "SS&C."

launched the Arcesium platform that offered DESCO's unified solution and relied on SS&C's Geneva software to perform certain accounting calculations. *See* Compl. ¶ 44; Ex. A; *SS&C Antitrust*, ECF No. 25, ¶ 3.

Of critical relevance is the fact that during the discussions between DESCO and SS&C ***nearly a decade ago***, SS&C gained a detailed understanding of DESCO's proprietary technology and its plans for Arcesium. *See* Compl. ¶ 45 (explaining that SS&C knew Arcesium offered "a single, integrated solution where Geneva was deployed alongside, and integrated with, Arcesium's solutions . . . to handle all aspects of customer's post-trade tasks"); *see also Arcesium*, ECF No. 1, ¶¶ 31–33 (same). That proprietary technology is the ***very same*** technology that SS&C now claims was built upon its supposed trade secrets and constitutes a breach of DESCO's software license. *See* Compl. ¶¶ 44–45; *see also* ECF No. 20-1 at 4 ("[T]he DESCO IT group that developed that software was spun off into Arcesium and the software itself has been a critical component of Arcesium's platform since its inception." (citing Compl. ¶ 54)). Despite knowing about DESCO's alleged misconduct, SS&C waited ***over nine years*** to file claims against DESCO for misappropriation of SS&C's purported intellectual property and breach of contract.

## III.    ARGUMENT

SS&C's claims against DESCO should be dismissed for at least three independent reasons.

*First*, SS&C's trade secret misappropriation and breach of contract claims are untimely because SS&C knew or should have known with reasonable diligence of its claims no later than 2015. *See, e.g.*, *My Mavens, LLC v. Grubhub, Inc.*, No. 20 Civ. 4657, 2023 WL 5237519, at *36 (S.D.N.Y. Aug. 14, 2023) (granting motion to dismiss federal and New York state trade secret claims as time barred).

*Second*, this action is duplicative of SS&C's *Arcesium* action, as SS&C concedes, and was filed after the deadline to amend its pleadings in the *Arcesium* action had long passed. *See, e.g.*, *Branded Apparel Grp. LLC v. Muthart*, No. 17 Civ. 5956, 2018 WL 4308545, at *3–5 (S.D.N.Y. Sept. 10, 2018) (dismissing duplicative action brought more than six months after deadline to amend or join additional parties in original action).

*Third*, SS&C's conclusory allegations fail to allege a protectable trade secret and therefore do not set forth "the grounds upon which its claim[s] rest[] through factual allegations sufficient to raise a right to relief above the speculative level." *Elsevier Inc. v. Dr. Evidence, LLC*, No. 17-cv-5540, 2018 WL 557906, at *5–7 (S.D.N.Y. Jan. 23, 2018) (first citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); then citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009)) (granting motion to dismiss federal and New York state trade secret claims).

For those reasons, explained in detail below, the Court should dismiss SS&C's Complaint in its entirety.

### A. SS&C's Claims Are Untimely And Should Be Dismissed With Prejudice Because, As SS&C Concedes, It Has Been Aware Of DESCO's Innovations And Plans For Arcesium Since 2015.

SS&C's claims are untimely, and therefore barred under the relevant statutes of limitation. SS&C's trade secret claims are subject to a three-year statute of limitations. *See* 18 U.S.C. § 1836(d) (federal trade secret misappropriation claim); *Zirvi v. Flatley*, 433 F. Supp. 3d 448, 460–61 (S.D.N.Y. 2020) (state trade secret misappropriation claim). And its contract claims are subject to a six-year statute of limitations. N.Y. C.P.L.R. § 213(2). As detailed below, SS&C's Complaint makes clear that SS&C knew, or by exercise of reasonable diligence should have known, of DESCO's alleged misconduct no later than 2015. Accordingly, SS&C's claims are time barred and should be dismissed with prejudice. *See Ellul v. Congregation of Christian Bros.*, 774

F.3d 791, 798 n.12 (2d Cir. 2014) ("Although the statute of limitations is an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint."); *see also Zirvi*, 433 F. Supp. 3d at 466 (citing *Wallace v. NYC Dep't Corr.*, 112 F. App'x 794, 795 (2d Cir. 2004)) (noting that amendment is futile where the statute of limitations has long since run).

### 1. SS&C's Trade Secret Claims Accrued No Later Than 2015.

For a federal trade secret claim to be timely, the trade secret owner must bring the claim within three years of when the owner either discovered or should have discovered by the exercise of reasonable diligence the basis of that claim. *See* 18 U.S.C. § 1836(d); *Espire Ads LLC v. TAPP Influencers Corp.*, 655 F. Supp. 3d 223, 252 (S.D.N.Y. 2023). Similarly, under New York law, a trade secret owner must bring a state trade secret claim within three years of the date that the alleged misappropriator either disclosed or used the alleged trade secrets. *My Mavens*, 2023 WL 5237519, at *33. Both statutes of limitation have expired on SS&C's trade secret claims.

SS&C's trade secret claims accrued and the limitations period began to run in 2015—*at the latest*. *See, e.g.*, Compl. ¶¶ 44, 51, 57(a). As SS&C concedes, its claims are based on technology that "DESCO developed *before* Arcesium was created" in 2015. ECF No. 20-1 at 4 (emphasis added). SS&C also concedes that in 2014, it learned of the accused DESCO technology during the parties' discussions regarding the prospective Arcesium partnership. Compl. ¶¶ 44, 54–55. Specifically, SS&C learned about the accused DESCO technology, how it integrated with Geneva, and how Arcesium would offer those packages as part of its platform. *See id.* ¶¶ 44–45; *see also Arcesium*, ECF No. 1, ¶¶ 31–33 (same). Accordingly, those discussions started the clock on any claims related to that technology. Even assuming, for the sake of argument, that the 2014 discussion did not start the limitations clock, it still would have started no later than 2015 when

Arcesium publicly announced its product offering—based on DESCO technology—that forms the basis of SS&C's claims. *See* Compl. ¶ 44; Ex. A. Once Arcesium openly offered for sale and sold that DESCO-based product offering, SS&C discovered, or should have discovered with reasonable diligence, its claims based on the DESCO technology. Accordingly, SS&C's trade secret claims are time barred—the limitations period began **no later than 2015 and expired in 2018**.

Should SS&C invoke either the ongoing tort doctrine or the fraudulent concealment doctrine to argue that the limitations period was equitably tolled, neither doctrine is applicable here. The ongoing tort doctrine provides that in certain circumstances of ongoing conduct, the limitations period can be equitably tolled until the final act of misconduct. *My Mavens*, 2023 WL 5237519, at *33. But that doctrine is superseded by federal statute. Indeed, the DTSA specifically provides that "a continuing misappropriation constitutes a single claim of misappropriation." *See* 18 U.S.C. § 1836(d). Likewise, under New York law, once SS&C learned of the alleged misconduct in 2014 or 2015, "there can be no continuing tort of unlawful use." *My Mavens*, 2023 WL 5237519, at *33.[3]

Nor does the doctrine of fraudulent concealment apply here. That doctrine provides that where the defendant concealed its misconduct, the statute of limitations is tolled until the plaintiff discovers that misconduct. *See Zirvi*, 433 F. Supp. 3d at 462. But SS&C cannot avail itself of that doctrine here because it had actual or constructive notice of the alleged misconduct no later than 2015. Indeed, in *Zirvi*, the court rejected application of the doctrine of fraudulent concealment

---

[3] *See also Houser v. Feldman*, 569 F. Supp. 3d 216, 224–25 (E.D. Pa. 2021) ("[T]he statute of limitations period under the DTSA runs for all misappropriations committed by a defendant at the time the plaintiff discovers, or should have discovered, a defendant's first misappropriation. In other words, 'although the initial wrongful acquisition of the trade secret and each subsequent misuse are separate acts of misappropriation, a claim for misappropriation arises only once . . . at the time of the initial misappropriation, subject to the discovery rule.' Accordingly, Houser's DTSA claims against Feldman shall be dismissed with prejudice as it is clear from the face of the complaint that the statute of limitations had run by February 2020." (quoting *B&P Littleford, LLC v. Prescott Mach., LLC*, Nos. 20-1449, 20-1451, 2021 WL 3732313, at *6 (6th Cir. Aug. 24, 2021))).

under similar circumstances—specifically, it found that "[f]or the same reasons that the plaintiffs had inquiry, actual, or constructive notice of alleged wrongdoing as early as 1994 and no later than 2010 for statute of limitations purposes, equitable tolling is also not appropriate in this case because the plaintiffs did not act, and could not have acted, with due diligence in this case given that they allegedly discovered the alleged impropriety in 2015." *Id.* Regardless, SS&C has not pled any allegations that would support a fraudulent concealment theory. Indeed, SS&C concedes that it has long known of the alleged misconduct that forms the basis of its claims.

Because the three-year limitations period expired prior to October 2023 and SS&C has no viable argument that the period was tolled, its federal and state trade secret claims should be dismissed with prejudice.

> ### 2. SS&C's Breach Of Contract Claims Are Time Barred Because They Arise From Conduct That Occurred More Than Six Years Ago.

Under New York law, breach of contract claims ordinarily expire six years after the alleged breach. *LiveIntent, Inc. v. Naples*, 293 F. Supp. 3d 433, 442 (S.D.N.Y. 2018); *see also* N.Y. C.P.L.R. § 213(2). Further, "[t]he plaintiff need not be aware of the breach or wrong to start the period running." *LiveIntent*, 293 F. Supp. 3d at 442 (alteration in original) (citation omitted).

SS&C's breach of contract claims are not timely because they are based on conduct that occurred more than six years ago. Specifically, SS&C alleges that DESCO breached its Geneva software license by developing the accused DESCO technology, licensing that technology to Arcesium, and continuing to work with Arcesium to develop and commercialize that product. Compl. ¶ 96. But, again, SS&C has long been aware of that conduct. As explained above, SS&C concedes that in 2014, it learned of the accused DESCO technology during the parties' discussions regarding the prospective Arcesium partnership. *Id.* ¶¶ 44, 54–55. SS&C also learned about how the accused DESCO technology relied on Geneva for certain accounting calculations and how

Arcesium would offer the products packaged together as a single, cohesive platform. *See id.* ¶¶ 44–45; *see also Arcesium*, ECF No. 1, ¶¶ 31–33 (same). Because the alleged conduct that forms the basis of SS&C's claims occurred in 2014 and 2015, the six-year limitations period expired, at the latest, in 2021. Accordingly, SS&C's breach of contract claims are time barred and should be dismissed with prejudice.

> ### B.   Because SS&C's Action Against DESCO Is Duplicative Of Its Action Against Arcesium, It Should Be Dismissed With Prejudice.

SS&C's claims against DESCO should be dismissed because they are duplicative of SS&C's claims in the *Arcesium* action. District courts have the authority to "stay or dismiss a suit that is duplicative of another federal court suit." *DiGennaro v. Whitehair*, 467 F. App'x 42, 43 (2d Cir. 2012) (quoting *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000)). That "power to dismiss a duplicative lawsuit is meant to foster judicial economy and the 'comprehensive disposition of litigation,'" and further exists "to protect parties from 'the vexation of concurrent litigation over the same subject matter.'" *DiGennaro v. Whitehair*, No. 9-CV-6551, 2010 WL 4116741, at *2 (W.D.N.Y. Oct. 19, 2010) (first quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952); then quoting *Adams v. Jacobs*, 950 F.2d 89, 93 (2d Cir. 1991)), *aff'd*, 467 F. App'x 42 (2d Cir. 2012). In particular, the Second Circuit has expressly recognized that two actions are duplicative when they "involve[] essentially the same factual background and legal questions" and where the interests of the defendant in the later action are "adequately represented by the defendants in [the first action]." *Lopez v. Ferguson*, 361 F. App'x 225, 226 (2d Cir. 2010) (citing *Alpert's Newspaper Delivery Inc. v. New York Times Co.*, 876 F.2d 266, 270 (2d Cir. 1989)). As explained below, SS&C's claims against DESCO and its claims in a separate action against its corporate affiliate Arcesium, ***by SS&C's own admission***, unquestionably involve the same legal and factual issues.

1. **SS&C Concedes That Its Claims Against DESCO Arise From—And Necessitate Discovery Of—The Very Same Facts That It Has Been Litigating Against Arcesium For Over 18 Months.**

A suit is duplicative of another where "the same proof is needed to support the claims in both suits or, in other words, whether facts essential to the second suit were present in the first suit." *Barclay v. Lowe*, 131 F. App'x 778, 779 (2d Cir. 2005) (quoting *Curtis*, 226 F.3d at 139). Here, SS&C concedes the duplicative nature of its actions against DESCO and Arcesium.

First, SS&C admits that the two actions involve "substantially overlapping," if not identical, legal issues. *See* ECF No. 17 at 2. For example, SS&C highlights that its breach of contract claims against DESCO and Arcesium overlap because "SS&C alleges that DESCO is liable on the basis of a contractual provision that makes DESCO responsible for Arcesium's conduct and that Arcesium is liable for breach of its own contract with SS&C on the basis of the same conduct." *Id.* (first citing Compl. ¶¶ 65–67; then citing *Arcesium*, ECF No. 35, ¶¶ 113–14, 117). Taken in turn, SS&C's "Breach of Contract – Use of Arcesium as Third Party Service Provider" claim, Compl. ¶¶ 83–88, and its "Breach of Contract – Liability for Arcesium's Conduct" claim, *id.* ¶¶ 89–93, target the same conduct alleged in SS&C's breach of contract claim asserted against Arcesium, *Arcesium*, ECF No. 36, ¶¶ 111–18. Likewise, SS&C's "Breach of Contract – Misappropriation" claim against DESCO, Compl. ¶¶ 94–97—which relies on the same alleged conduct for its breach claim as it does for its trade secret claims, *id.* ¶¶ 69–82—targets the same conduct alleged in SS&C's trade secret claims against Arcesium, *Arcesium*, ECF No. 36, ¶¶ 91–104. *See* ECF No. 20-1 at 1 (SS&C asserting that "the cases involve a concerted effort by DESCO and Arcesium to steal the same trade secrets from the same plaintiff for the same purpose." (citing *Arcesium*, ECF No. 226 at 2)); *see also Arcesium*, ECF No. 232-1 at 1 (same).

Second, SS&C concedes that its action against DESCO arises from—and necessitates discovery of—the very same facts that it has litigated for more than **one year and a half** in the *Arcesium* action. *See* ECF No. 20-1 at 4 (arguing that the alternative to allowing SS&C to "use discovery from the Arcesium matter to bolster its claims against DESCO," in violation of the *Arcesium* Protective Order, "would be for the parties to **relitigate the same document discovery** in the DESCO case that was litigated in the Arcesium case" (emphasis added)). Indeed, SS&C readily admits that litigation—at the discovery stage—in this action would be effectively identical to the litigation proceedings in the *Arcesium* action.[4] For example, according to SS&C, "[a]bsent consolidation, many witnesses . . . will need to be **deposed twice on the same facts**, and the last year-and-a-half of document requests and productions in the Arcesium case will need to be **relitigated** in the DESCO case." *Id.* at 1 (emphases added); *see also id.* ("Requiring these two cases to proceed separately . . . would result in parallel tracks of identical discovery.").

Third, the principle of privity bars relitigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant to justify preclusion. *See Branded Apparel*, 2018 WL 4308545, at *3 (citing *DiGennaro*, 467 F. App'x at 44; *Barclay*, 131 F. App'x at 779). SS&C's own allegations establish such a sufficiently close relationship exists between DESCO and Arcesium.[5] SS&C alleges that DESCO (a) is Arcesium's majority owner, and (b) licensed to

---

[4] Notably, SS&C does not offer any reason why DESCO could not have been joined as a party in the *Arcesium* action, nor does SS&C attempt to demonstrate good cause for not moving to amend its complaint in the *Arcesium* action and instead filing a second action against DESCO. *See DiGennaro*, 467 F. App'x at 44 (concluding "that the district court did not abuse its discretion in finding that DiGennaro failed to demonstrate good cause for circumventing the magistrate judge's scheduling order and in dismissing her second complaint as duplicative").

[5] In accordance with the standard to dismiss a complaint—and solely for the purpose of its motion to dismiss—DESCO accepts as true SS&C's allegations regarding DESCO's and Arcesium's relationship including that DESCO "has always closely monitored and controlled Arcesium." Compl. ¶ 16. DESCO reserves its rights to challenge the validity of these allegations later.

Arcesium the technology that forms the basis of SS&C's claims in both cases. Compl. ¶¶ 3, 7. In addition, SS&C alleges that DESCO is a customer of Arcesium, which uses the accused technology to provide DESCO with post-trade services. *Id.* ¶ 7. Further, SS&C alleges that DESCO "has always closely monitored and controlled Arcesium, including representation on Arcesium's board of directors" as well as its "direct involvement in day-to-day business decisions relating to personnel[] [and] technology." *Id.* ¶ 16. SS&C also alleges that DESCO provides Arcesium with financial support and "monitor[s] and approve[s] key aspects of Arcesium's day-to-day business," in addition to sharing its resources, employees, and management. *Id.* ¶¶ 16, 59.

Because "[a]djudication of the claims against [DESCO] would necessarily involve findings on the exact same facts required to resolve the claims [against Arcesium] in the first action" and no dispute exists that DESCO and Arcesium are in privity, the DESCO action is duplicative. *See Branded Apparel*, 2018 WL 4308545, at *3 (quoting *DiGennaro*, 467 F. App'x at 44); *see also Morency v. Vill. of Lynbrook*, 1 F. Supp. 3d 58, 62 (S.D.N.Y. 2014).

## 2. By Filing This Action Against DESCO, SS&C Attempts To Circumvent The Court's Scheduling Order In The *Arcesium* Action And To Avoid The Consequences Of Its Own Delay.

"When a court is presented with a duplicative action, 'simple dismissal of the second suit is [a] common disposition . . . .'" *Jemmott v. Metro. Transit Auth.*, No. 13-CV-2665, 2014 WL 2120357, at *2 (E.D.N.Y. May 21, 2014) (alteration in original) (quoting *Curtis*, 226 F.3d at 138–39).[6] In fact, courts often conclude that dismissal **with prejudice** is "the proper remedy" where a plaintiff—attempting to avoid the consequences of its own delay, such as here—files a

---

[6] *Cf. Dish Network, L.L.C. v. Am Broad. Cos.*, No. 12 Civ. 4155, 2012 WL 2719161, at *2 (S.D.N.Y. July 9, 2012) ("Because parties 'should be free from the vexation of concurrent litigation over the same subject matter,' there is a strong presumption that a later lawsuit will be dismissed in favor of the first-filed lawsuit." (quoting *Adams*, 950 F.2d at 93)).

duplicative action in an effort to circumvent a deadline to amend or add parties in a different case. *Branded Apparel*, 2018 WL 4308545, at *1, *4–5 ("The bottom line is that Branded had every opportunity and incentive under the schedule the Court (with the parties' consent) had set to bring its claims against Muthart. For whatever reasons, it chose not to do so. The Court will not reward Branded's intention or subsequent gamesmanship.").[7]

Here, SS&C's belated filing of claims against DESCO—that are plainly duplicative of SS&C's long-pending claims in the *Arcesium* action—is further exacerbated by SS&C's apparent attempt to circumvent the scheduling order in the *Arcesium* action. The deadline to amend or add parties to the *Arcesium* action was May 20, 2022. *Arcesium*, ECF No. 33 at 1. Yet SS&C never moved to modify the scheduling order, nor did it move for leave to file an amended complaint in that case. Instead, on October 18, 2023—long after the *Arcesium* action's deadline to amend and just two months before the fact discovery deadline, *id.*—SS&C filed this new action against DESCO. Next, rather than file an untimely motion to amend in the *Arcesium* action, SS&C moved to consolidate the two actions. "But the Rules of Civil Procedure do not permit such conduct. Indeed, 'the court must insure [sic] that the plaintiff does not use the incorrect procedure of filing duplicative complaints for the purposes of circumventing the rules pertaining to the amendment of complaints.'" *Oliver v. Am. Express Co.*, No. 19-CV-566, 2023 WL 4471937, at *8 n.8 (E.D.N.Y. July 11, 2023) (quoting *Walton v. Eaton Corp.*, 563 F.2d 66, 71 (3d Cir. 1977) (en banc)).

---

[7] *See, e.g.*, *RVC Floor Decor, Ltd. v. Floor & Decor Outlets of Am., Inc.*, No. 19-CV-4894, 2020 WL 5709180, at *5 (E.D.N.Y. Sept. 24, 2020) ("[C]ourts do not look fondly on 'gamesmanship' by the parties, including where parties deliberately seek to circumvent a court's scheduling order. Where 'much of the . . . amended complaint allege[s] events that had occurred prior to [the pending action's] filing,' and where 'if [the plaintiff] had timely raised those allegations they would have been heard in [the present action]' it is not an abuse of discretion to hold a plaintiff to the consequences of their delay." (alterations in original) (citations omitted)); *Morency*, 1 F. Supp. 3d at 62 (same); *Curtis*, 226 F.3d at 140 (same); *DiGennaro*, 467 F. App'x at 44 (same).

In short, "rather than pursue a motion it knew would be dead on arrival" in the *Arcesium* action, SS&C filed an impermissible duplicative action against DESCO. *Branded Apparel*, 2018 WL 4308545, at *5. The Court should "not reward" SS&C's dilatory conduct or its "subsequent gamesmanship." *Id.* SS&C's action against DESCO should accordingly be dismissed with prejudice.

### C. SS&C's Trade Secret Claims Are Legally Deficient Because SS&C Fails to Plead Sufficient Facts Supporting The Existence Of A Trade Secret.

To plead the existence of a trade secret in a misappropriation claim, brought under the DTSA or New York law, SS&C must sufficiently identify the information it claims as its trade secrets and allege facts plausibly showing that the information meets the requirements of a protectable trade secret. *My Mavens*, 2023 WL 5237519, at *18–19.[8] The specificity requirement places a defendant on notice of the bases for the claim being made against it, and allows a factfinder to determine whether certain information is, in fact, a trade secret. *Zabit v. Brandometry, LLC*, 540 F. Supp. 3d 412, 422 (S.D.N.Y. 2021); *see also Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 906 (3d Cir. 2011).[9] Once identified, the "'most important consideration' in determining whether information is a trade secret is 'whether the information was secret.'" *Broker Genius, Inc. v. Zalta*,

---

[8] The standard for asserting a trade secret appropriation claim under New York law is the same as that under the Defend Trade Secrets Act ("DTSA"). *See My Mavens*, 2023 WL 5237519, at *18; *Zabit v. Brandometry, LLC*, 540 F. Supp. 3d 412, 421 (S.D.N.Y. 2021). "[C]ourts have found that a complaint sufficiently plead[ing] a DTSA claim . . . also states a claim for misappropriation of trade secrets under New York Law." *My Mavens*, 2023 WL 5237519, at *18 (quoting *Catalyst Advisors, L.P. v. Catalyst Advisors Invs. Glob. Inc.*, 602 F. Supp. 3d 663, 671 (S.D.N.Y. 2022)). "Similarly, courts in this Circuit cite to New York common law when deciding matters under the DTSA." *Id.* (citing *Art & Cook. Inc. v. Haber*, No. 17-cv-1634, 2017 WL 4443549, at *2 n.3 (E.D.N.Y. Oct. 3, 2017)).

[9] "Experience has shown that it is easy to allege theft of trade secrets with vagueness, then take discovery into the defendants' files, and then cleverly specify what ever happens to be there as having been trade secrets stolen from plaintiff. A true trade secret plaintiff ought to be able to identify, up front, and with specificity the particulars of the trade secrets without any discovery." *Jobscience, Inc. v. CVPartners, Inc.*, No. C 13-4519, 2014 WL 852477, at *5 (N.D. Cal. Feb. 28, 2014).

280 F. Supp. 3d 495, 514 (S.D.N.Y. 2017) (quoting *Lehman v. Dow Jones & Co.*, 783 F.2d 285, 298 (2d Cir. 1986)).

SS&C asserts trade secret protection in conclusory fashion over a jumble of vaguely described information, including "Geneva software" functionalities, "Geneva's database schema and data model," "Geneva's integration layer," "sample pages, sample decompiled source code, and documentation which provide detailed instructions and examples on using Geneva's integration layer," and "Geneva's Chart of Accounts." Compl. ¶¶ 27–33. But none of that information, as alleged, qualifies as a protectable trade secret for at least the following three reasons: (1) certain of SS&C's asserted trade secrets are not sufficiently identified because they are merely vaguely defined Geneva software functionalities; (2) certain of SS&C's asserted trade secrets are not sufficiently identified because the information is indistinguishable from general knowledge; and (3) certain of SS&C's asserted trade secrets are not secret because SS&C has not maintained their confidentiality.

### 1. Certain Of SS&C's Asserted Trade Secrets Are Not Sufficiently Identified Because They Are Merely Vaguely Defined Geneva Functionalities.

The standard for trade secrecy is "far greater than the standard for confidentiality of business information," and as such, an assertion that a general category of confidential information is a "trade secret" "without providing any details to 'generally define the trade secret[] at issue'" does not make it so. *Elsevier*, 2018 WL 557906, at *5–6. *Elsevier* is directly on point. There, the Court dismissed trade secret claims directed to "'clinical methods,' 'process to assess the quality of evidence and how to execute it,' and 'interpretation of data'" because the plaintiff failed to explain the functionality of those methods, processes, and interpretations. *Id.* at *6.

Here, like the counterclaim plaintiff in *Elsevier*, SS&C asserts that various vaguely defined functionalities of its Geneva Software constitute trade secrets. Compl. ¶ 27. For example, SS&C claims that its trade secrets include the way in which Geneva:

- "performs proprietary portfolio accounting functions," *id.*;

- "stores investment data, portfolio data, price data, transaction data, and other data in a proprietary object-oriented relational database and uses the stored data to derive accounting data using proprietary methodologies," *id.*;

- "presents . . . accounting data in the form of Geneva reports," *id.*; "sets up tracks, manages, accounts for and reports on diverse investment portfolios," *id.* ¶ 29;

- "manage[s] a broad range of complex asset classes," *id.* ¶ 33; and

- interfaces through API "functions that are structured, sequenced and organized in a proprietary manner," *id.* ¶ 30.

And, like the counterclaim plaintiff in *Elsevier*, SS&C fails to provide any detail regarding those vaguely defined functionalities. Those conclusory allegations describe general concepts that could be found in any accounting software. Without a specific description of what SS&C contends are the trade secrets at issue, DESCO lacks sufficient notice and cannot even begin to investigate or prepare its defense to SS&C's claims.

Accordingly, SS&C has failed to sufficiently identify the Geneva functionalities it asserts to be trade secret, and the Court should dismiss its claims as to that information.

### 2. Certain Of SS&C's Asserted Trade Secrets Are Not Sufficiently Identified Because The Information Is Indistinguishable From General Knowledge.

To sufficiently plead a trade secret claim, a plaintiff must describe the underlying trade secret "with sufficient particularity to separate it from matters of general knowledge in the trade

or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Mallet & Co. v. Lacayo*, 16 F.4th 364, 384 (3d Cir. 2021) (quoting *Oakwood*, 999 F.3d at 906) (vacating a preliminary injunction). SS&C claims its "database schema," "data model," database design choices, and "Chart of Accounts" are trade secrets. But, as discussed further below, SS&C fails to distinguish those purported trade secrets from general knowledge.

Without any support, SS&C asserts trade secret protection over the purported implementation of the following general concepts in Geneva:

- "database schema and data model [which] include thousands of data fields and classes of data;"

- "design choices as to which classes and data elements should be collected and stored;"

- "naming conventions and what to call the classes and data elements;"

- "the organization of the classes and data elements in the database;"

- "the characteristics, definitions, and functionality associated with each class or data element; the relationships, groupings, connections, and hierarchies among the classes and data elements;" and

- "the identification, definition and format of data elements required for loading data into Geneva."

Compl. ¶ 28. But Geneva is ***accounting*** software that tracks investments in multiple common asset classes including "bonds, swaps, futures, options, other derivatives, asset backed securities, and credit facilities." *Id.* ¶ 29. As a practical matter, at least some—if not all—of Geneva's "data fields and classes of data," "design choices," "naming conventions," class or data element

"characteristics, definitions, and functionality," and "relationships, groupings, connections, and hierarchies among the classes and data elements" are dictated by general accounting practice and principles, financial regulations, or industry standards. Thus, SS&C's conclusory allegations fail to delineate where generally accepted accounting practices used by its software end and its trade secrets supposedly begin. *See Elsevier*, 2018 WL 557906, at *6 (concluding that "database field names, parameters and scheme information" were general categories of information not eligible for trade secret protection).

Moreover, much of what SS&C claims to be trade secrets may already be publicly available due to SS&C's own actions. Indeed, SS&C published a 44-page "Geneva Sample Reports" document on its website with 40 samples that necessarily set forth some of the information SS&C now claims to be trade secret. *See generally Arcesium*, ECF No. 113-10. Yet, SS&C does not even attempt to distinguish such public knowledge from what it claims to be proprietary information. *See Elsevier*, 2018 WL 557906, at *6.

SS&C also asserts trade secret protection over Geneva's "Chart of Accounts," "which include hundreds of 'seeded' financial accounts, which are ***default*** financial accounts included with Geneva when it is licensed to a customer." Compl. ¶ 32 (emphasis added). But SS&C's customers, which include "asset managers, hedge funds, prime brokers, fund administrators, private equity firms, and family offices," must be generally aware of some—if not all—such accounts. *Id.* ¶ 17. Otherwise, SS&C would not readily include them as a global default for supporting all its licensees' financial activities. *Id.* ¶ 32 (noting that "user-defined financial accounts" are only "added by the customer after they license Geneva").

In sum, SS&C cannot assert trade secrecy over its "database schema," "data model," database design choices, and "Chart of Accounts" because that information is indistinguishable

from general industry knowledge. As such, SS&C's trade secret claims as to that information should be dismissed.

### 3. Certain Of SS&C's Asserted Trade Secrets Are Not Secret Because SS&C Failed To Maintain Their Secrecy.

When a company cedes control over information to a third party—e.g., a licensee—that has the right to distribute it without any obligation to maintain it as secret, that information cannot be the basis of a viable trade secret claim. *See Turret Labs USA, Inc. v. CargoSprint, LLC*, No. 19-CV-6793, 2021 WL 535217, at *5 (E.D.N.Y. Feb. 12, 2021), *aff'd*, No. 21-952, 2022 WL 701161 (2d Cir. Mar. 9, 2022). *Turret Labs* is instructive. There, the plaintiff asserted trade secret claims based on the functionality of software that it had licensed to a third party. *Id.* However, the plaintiff conceded in its complaint that the third party's customers necessarily had access to the information, and failed to plead that their access was subject to any confidentiality obligations. *Id.* As a result, the court concluded the software's functionality was not a cognizable trade secret and dismissed the relevant claims. *Id.*

Here, SS&C asserts trade secret protection over Geneva's integration layer—which includes "Geneva's APIs," "Geneva's RSL database query language and Query Language," "Geneva Loader," and "Geneva Binaries"—and over "sample pages, sample decompiled source code, and documentation which provide detailed instructions and examples on using Geneva's integration layer." Compl. ¶¶ 30–31. But SS&C concedes that customers all over the world have access to Geneva through several channels, including through third-party resellers who have the authority to directly enter into Geneva licensing agreements with customers. *Id.* ¶¶ 18, 20, 45; *see also SS&C Antitrust*, ECF No. 79, at 5 ("SS&C has decided to freely license Geneva to many of its competitors"). And, the limited allegations SS&C has pled suggest that ***only*** its third-party resellers may be bound by a confidentiality provision. *See* Compl. ¶ 46 (alleging in a conclusory

fashion that Arcesium's third-party reseller agreement "contained extensive confidentiality provisions"). Indeed, like the plaintiff in *Turret Labs*, SS&C has **not** alleged that the **customers** of its third-party resellers are bound by any contractual obligation to maintain the confidentiality of SS&C's alleged Geneva integration layer trade secrets. *See, e.g.*, *id.* ¶ 46 (silent regarding obligations of customers of third-party resellers).

Because SS&C fails to allege that its third-party resellers' customers were bound to any specific confidentiality provisions, SS&C has failed to establish the secrecy of its purported trade secrets. *Broker Genius*, 280 F. Supp. 3d at 514 (citations omitted).[10] This is particularly true for Geneva's integration layer, which SS&C acknowledges exists so that "***developers may interact with Geneva's integration layer*** to run Geneva specific functions and queries, to extract data from specific data fields in the database, or to input data into specific fields in the Geneva database and develop interconnections with other systems." Compl. ¶ 30 (emphasis added). Even though customers of SS&C's third-party resellers have full and open access to the Geneva integration layer, SS&C has not alleged that those customers have any obligation to keep information about that integration layer confidential.

In sum, SS&C's allegations fail to establish the requisite secrecy of the Geneva integration layer—which includes "Geneva's APIs," "Geneva's RSL database query language and Query Language," the "Geneva Loader," and "Geneva Binaries,"—and of the "sample pages, sample decompiled source code, and documentation which provide detailed instructions and examples on using Geneva's integration layer." *Id.* Having ceded control of the information to its third-party resellers without apparently requiring them to bind their customers to specific confidentiality

---

[10] *See also Structured Cap. Sols., LLC v. Commerzbank AG*, 177 F. Supp. 3d 816, 832 (S.D.N.Y. 2016) (granting summary judgment to defendant on trade secret misappropriation claim because the agreement that plaintiff characterized as a confidentiality agreement did not actually place defendant "under an obligation to maintain [the] confidentiality" of plaintiff's alleged trade secrets).

provisions, that information cannot constitute a protectable trade secret.  For this reason, SS&C's claims as to that information should be dismissed.

*     *     *

"[T]he pleading standard set forth in Twombly and Iqbal requires that the complaint allege facts sufficient to identify the information for which protection is claimed and sufficient information about its nature, value and measures taken to safeguard it to support an inference that the information qualifies as a trade secret."  *Lawrence v. NYC Med. Prac.*, No. 18-cv-8649, 2019 WL 4194576, at *4 (S.D.N.Y. Sept. 3, 2019).  Because—as explained in detail above—SS&C fails to do so for each of its three alleged categories of trade secrets, SS&C has failed to state a claim for trade secret misappropriation.

## IV.    CONCLUSION

For all of the foregoing reasons, DESCO respectfully requests that the Court grant the motion to dismiss SS&C's claims with prejudice.

Dated: December 11, 2023

By: _/s/ Steven M. Balcof_

John M. Desmarais
Email: jdesmarais@desmaraisllp.com
Steven M. Balcof
Email: sbalcof@desmaraisllp.com
**DESMARAIS LLP**
230 Park Avenue
New York, NY 10169
Phone: 212-351-3400

Justin P.D. Wilcox (admission pending)
Email: jwilcox@desmaraisllp.com
Marie E. Weisfeiler
Email: mweisfeiler@desmaraisllp.com
**DESMARAIS LLP**
1899 Pennsylvania Avenue NW
Washington, DC 20006
Phone: (202) 451-4900

_Counsel for Defendant D. E. Shaw & Co., L.P._