UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SS&C TECHNOLOGIES HOLDINGS,
INC. AND ADVENT SOFTWARE, INC.

    Plaintiffs,

v.

D.E. SHAW & CO., L.P.,

    Defendant.

23-CV-09158 (TMR)

**OPINION & ORDER**

Dated: June 5, 2025

Stephen R. Fishbein, John A. Nathanson, Christopher L. LaVigne, Benjamin Klebanoff and Sheyla D. Soriano, Allen Overy Shearman Sterling US LLP, of New York, N.Y., for plaintiffs SS&C Technologies Holdings, Inc. and Advent Software, Inc.

John M. Desmarais, Steven M. Balcof, Justin P.D. Wilcox and Marie E. Weisfeiler, Desmarais LLP, of New York, N.Y. and Washington, D.C., for defendant D.E. Shaw & Co., L.P.

TIMOTHY M. REIF, Judge, United States Court of International Trade, Sitting by Designation:

SS&C Technologies Holdings, Inc. ("SS&C") and Advent Software, Inc. ("Advent") (collectively, "plaintiff") bring the instant action against D.E. Shaw & Co., L.P. ("DESCO," or "defendant"), alleging: (1) violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, et seq.; (2) common law misappropriation of trade secrets; and (3) breach of contract. *See* Am. Compl., ECF No. 32.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), defendant moves to dismiss the amended complaint. *See* Notice of Def.'s Mot. to

Dismiss the Am. Compl., ECF No. 37; Mem. of Law in Supp. of Def.'s Mot. to

Dismiss the Am. Compl. ("Def. Br."), ECF No. 39; Reply Mem. of Law in Supp. of

Def.'s Mot. to Dismiss the Am. Compl. ("Def. Reply Br."), ECF No. 47.

     For the reasons discussed below, the court grants in part and denies in part

defendant's motion to dismiss.

## BACKGROUND

### I.    Parties in the instant action

     Plaintiff is a global business that provides specialized software and software-

enabled services to the financial services industry.  Am. Compl. ¶¶ 8, 14.  SS&C has

several subsidiaries and affiliates, including Advent, which SS&C acquired in 2015.

*Id.* ¶ 9.

     Defendant is a large asset manager that manages a range of investments for

its customers.  *Id.* ¶ 15.

### II.    Factual background

     Plaintiff's product, Geneva, is a "portfolio accounting software product . . .

designed to meet the real-time needs of asset managers, hedge funds, prime

brokers, fund administrators, private equity firms, and family offices."  *Id.* ¶ 18.

("Geneva serves as a single source of consolidated data that provides a

comprehensive, accurate, and timely view of portfolio data across an entire firm.").

Plaintiff licenses Geneva directly to customers, as well as through a limited number

of reseller agreements.  *Id.* ¶¶ 19-20.  Only authorized parties are permitted to

access and use Geneva. *Id.* ¶ 20. Geneva was Advent's "leading software product" when SS&C acquired Advent in 2015. *Id.* ¶ 22.

In September 2003, Advent and defendant entered into the Software License Support Agreement (the "SLSA"). *Id.* ¶ 46. The SLSA granted defendant a non-exclusive, non-sublicensable and non-transferable license to use Geneva, but solely for defendant's own data processing operations. *Id.*

In 2010, defendant began to develop a "suite of software applications designed to enhance and optimize its use of Geneva" (the "DESCO Applications"). *Id.* ¶ 64; Def. Br. at 3.

In 2014, Advent and defendant executed an amendment to the SLSA, titled "Maintenance Amendment (With Hosting Language)" (the "MA"). Am. Compl. ¶ 50. The MA set forth the terms and conditions for defendant to use a third-party service provider to "provide certain services related to Geneva." *Id.* The MA provided that "the third-party service provider could only access Geneva to assist [defendant] and would not, for example, use its Geneva access to develop a competing software product." *Id.* The MA also prohibited defendant from using a third-party service provider "that licensed a portfolio accounting engine in competition with SS&C." *Id.* ¶ 53.

Later in 2014, defendant founded Arcesium LLC ("Arcesium"), a non-party in this action, to deliver DESCO's suite of software applications as an integrated technology platform to other companies. *Id.* ¶¶ 67-68.

In 2015, plaintiff and Arcesium entered the Hosted Reseller Agreement (the "HRA") under which "Arcesium became a licensed reseller of Geneva, whereby Arcesium could offer customers a license to Geneva." *Id.* ¶¶ 55-56. Arcesium would offer customers a single, integrated solution in which Geneva was deployed alongside, and integrated with, Arcesium's products to "handle all aspects of the customer's post-trade tasks." *Id.* ¶ 56.

Like the SLSA and the MA, the HRA restricted Arcesium's use of Geneva and prohibited Arcesium from using Geneva "for improper purposes such as to develop its own portfolio accounting capabilities." *Id.* ¶ 57. The HRA also prohibited Arcesium from disclosing SS&C's confidential information and from using Geneva upon non-renewal or termination of the HRA.[1] *Id.* ¶¶ 57-58, 61. The term of the HRA was five years, after which either contracting party reserved the right to not renew the agreement. *Id.* ¶ 60.

That same year, defendant licensed the DESCO Applications to Arcesium. *Id.* ¶ 70a. Arcesium began also to host, manage and operate DESCO's instance of Geneva. *Id.* ¶ 76.

In 2019, Arcesium began development of its own software platform, which it brought to market in late 2020. *Id.* ¶ 70b.

---

[1] The HRA provided certain "run-off rights" following the expiration of the agreement. Am. Compl. ¶ 61. These rights allowed Arcesium to continue to service existing customers for the duration of the initial term of the resold customer's Geneva license. *Id.*

On January 10, 2020, the HRA expired after SS&C declined to renew for another five-year term.  *Id.* ¶ 60.  Also in 2020, Arcesium developed an interface application between the Arcesium platform and Geneva.  *Id.* ¶ 70c.  According to plaintiff, the interface application was the means by which Arcesium "surreptitiously access[ed] and operate[d] its customers' instances of Geneva while maintaining the fiction that it no longer had such access" following the expiration of the HRA.  *Id.*

Plaintiff alleges that Arcesium misappropriated Geneva trade secrets to develop the Arcesium platform and interface application.  *Id.* ¶¶ 70b-c.  Plaintiff also alleges that defendant and Arcesium "kept secret from SS&C that they were developing a portfolio accounting offering that Arcesium planned to use to compete against SS&C once the HRA expired."  *Id* ¶ 71.  Specifically, plaintiff asserts that there was "a secret plan by which Arcesium would use its status as a Geneva reseller to lure in new customers with Geneva and then switch them to Arcesium's portfolio accounting engine when it was ready."  *Id.*

On April 13, 2020, SS&C notified Arcesium that "it was in breach of its post-termination obligations and that any rights Arcesium had under the HRA to continue to use Geneva had terminated."  *Id.* ¶ 62.

On March 10, 2022, plaintiff brought an action against Arcesium in this Court.  *See* Compl., *SS&C Techs. Holdings, Inc. v. Arcesium LLC* (the "*Arcesium* action"), No. 1:22-cv-02009 (S.D.N.Y. Mar. 10, 2022), ECF No. 1.  Plaintiff sought relief for Arcesium's alleged violation of the DTSA, common law misappropriation of

trade secrets, unfair competition, breach of contract and breach of the covenant of good faith and fair dealing. *See id.*

On August 9, 2023, plaintiff sent DESCO a notice of breach under the SLSA. *Id.* ¶ 85. Parties' subsequent discussions did not resolve the dispute. *Id.*

On December 20, 2024, the Court granted Arcesium's motion to dismiss with prejudice plaintiff's claims against it in the *Arcesium* action. *SS&C Techs. Holdings, Inc. v. Arcesium LLC*, No. 22-CV-02009 (TMR-OTW), 2024 WL 5186530, at *1 (S.D.N.Y. Dec. 20, 2024).

## III.    Procedural history

On October 18, 2023, plaintiff filed its complaint in the instant action. Compl., ECF No. 1.

On November 15, 2023, plaintiff filed a letter motion to consolidate the instant action with the *Arcesium* action. Letter Mot. for Consol. Pursuant to Fed. R. Civ. P. 42(a), ECF No. 17.

On December 11, 2023, defendant filed a motion to dismiss the complaint. Notice of Def.'s Mot. to Dismiss the Compl., ECF No. 22.

On January 5, 2024, the Court denied plaintiff's letter motion to consolidate. Op. & Order, ECF No. 31.

On January 10, 2024, plaintiff filed an amended complaint. Am. Compl. On February 9, 2024, defendant moved to dismiss the amended complaint and filed its accompanying brief. Def. Mot; Def. Br. On March 11, 2024, plaintiff filed its response brief. Mem. of Law in Opp'n to Def.'s Mot. to Dismiss the Am. Compl. ("Pl.

Br."), ECF No. 44.  On March 25, 2024, defendant filed its reply brief.  Def. Reply

Br.

## JURISDICTION AND STANDARD OF REVIEW

The court exercises subject matter jurisdiction over plaintiff's federal law

claims pursuant to 18 U.S.C. § 1836(c) and 28 U.S.C. § 1331.  The court exercises

supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. §

1367.

To withstand a motion to dismiss, "a complaint must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its

face."  *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022) (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  On a motion to dismiss, "a district

court may consider the facts alleged in the complaint, documents attached to the

complaint as exhibits, and documents incorporated by reference in the complaint."

*United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).  However,

the "court's function on a Rule 12(b)(6) motion is not to weigh the evidence that

might be presented at a trial but merely to determine whether the complaint itself

is legally sufficient."  *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

The Supreme Court has held that "[w]hile a complaint attacked by a Rule

12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than

labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted and second alteration in original).

## DISCUSSION

## I.    Duplicative litigation

### A.    Legal framework

"As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000); *Wang v. Ren*, 2023 WL 1977233, at *1 (2d Cir. Feb. 14, 2023).

For the rule against duplicative litigation to be invoked properly, "[t]here must be the same parties, or, at least, such as represent the same interests; there must be the same rights asserted and the same relief prayed for; the relief must be founded upon the same facts, and the title, or essential basis, of the relief sought must be the same." *Sacerdote v. Cammack Larhette Advisors, LLC*, 939 F.3d 498, 504 (2d Cir. 2019) (alteration in original) (quoting *The Haytian Republic*, 154 U.S. 118, 124 (1894)).

The rule against duplicative litigation is "distinct from but related to the doctrine of claim preclusion or *res judicata*." *Curtis*, 226 F.3d at 138. "Because they are animated by similar policy goals and concerns, [courts] frequently apply principles governing the doctrine of claim preclusion to the rule against duplicative litigation." *Sacerdote*, 939 F.3d at 504; *see* 18 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* ("Wright & Miller") § 4404 (3d ed.) ("One

growing trend is to import the tests of claim preclusion into a 'claim-splitting'
doctrine that enables a court, as a matter of discretion, to dismiss an action that
presents the same claim, as measured by claim-preclusion tests, as another pending
action.").

### B.    Trade secrets claims

The court concludes that the DTSA and state-law trade secrets claims are not
duplicative because DESCO and Arcesium are not "the same parties, or, at least,
such as represent the same interests." *Sacerdote*, 939 F.3d at 504 (quoting *The
Haytian Republic*, 154 U.S. at 124).

Defendant argues that the instant case is "duplicative" of the *Arcesium* action
because there is privity between DESCO and Arcesium and "because they involve
'essentially the same factual background and legal questions.'"  Def. Br. at 6-9
(quoting *Lopez v. Ferguson*, 361 F. App'x 225, 226 (2d Cir. 2010)).

With respect to privity, the U.S. Court of Appeals for the Second Circuit (the
"Second Circuit") has explained that "if a plaintiff suffers the same harm at the
hands of two defendants, the plaintiff may institute one suit against one defendant
and a separate suit against another defendant alleging that each caused his injury."
*Sacerdote*, 939 F.3d at 505.  Such actions would not constitute duplicative litigation.
*See id.*  However, there is an exception to this rule when "parties are said to be in
privity."  *Id.* at 506.

The *Sacerdote* court noted that a "sufficiently close relationship and identical
interests" alone are "insufficient as a matter of law to support a finding of privity."

*Id.* at 508-09.  Instead, the current categories of privity as recognized by the Second

Circuit are as follows:

> (1) agreements by a nonparty to be bound by the determination of issues
> in an action between others; (2) certain pre-existing substantive legal
> relationships based in property law between the nonparty and the party,
> such as preceding and succeeding owners of property, bailee and bailor,
> and assignee and assignor; (3) representative suits where the nonparty's
> interest was adequately represented by a party with the same interests,
> such as class actions and suits brought by trustees, guardians, and other
> fiduciaries; (4) when a nonparty has assumed control over the litigation
> in which the judgment was rendered; (5) when a nonparty is acting as a
> proxy, agent, or designated representative of a party bound by a
> judgment; and (6) when a statutory scheme expressly forecloses
> successive litigation by nonlitigants, so long as the scheme comports
> with due process.

*Id.* at 506 (footnotes omitted) (citing *Taylor v. Sturgell*, 553 U.S. 880, 893-895

(2008)).

Defendant argues that "privity exists between DESCO and Arcesium because

DESCO has agreed 'to be bound by the determination of issues' in the action

between SS&C and Arcesium."  Def. Reply Br. at 2.  In other words, defendant

asserts that DESCO and Arcesium fall within the first category of privity set forth

in *Sacerdote*.  *See Sacerdote*, 939 F.3d at 506.  Defendant points specifically to

plaintiff's allegation in the amended complaint that, pursuant to the MA, DESCO is

liable for Arcesium's conduct with respect to Geneva as if DESCO had committed

those acts itself.  Def. Reply Br. at 2 (quoting Am. Compl. ¶ 79).

The MA "provided that [DESCO] 'shall remain liable for the acts and

omissions of Third Party Service Provider in breach of [DESCO's] rights and

obligations under the [SLSA] as if [DESCO] had undertaken such acts and committed such omissions directly.'" Am. Compl. ¶ 54 (third alteration in original).

With respect to the first category of privity, "[a] person who agrees to be bound by the determination of issues in an action between others is bound *in accordance with the terms of his agreement*." *Taylor*, 553 U.S. at 893 (alteration in original) (emphasis supplied) (quoting 1 Restatement (Second) of Judgments § 40 (Am. L. Inst. 1980)). "For example, if separate actions involving the same transaction are brought by different plaintiffs against the same defendant, all the parties to all the actions may agree that the question of the defendant's liability will be definitely determined, one way or the other, in a test case." *Id.* (internal quotation marks omitted) (quoting D. Shapiro, *Civil Procedure: Preclusion in Civil Actions* 77-78 (2001)).

The MA, as described in the pleadings, contemplates that DESCO would be bound by "the determination of issues in an action" between SS&C and Arcesium in relation to Arcesium's violation of DESCO's obligations under the SLSA. *Sacerdote*, 939 F.3d at 506. Stated differently, DESCO agreed to be bound by the outcome of any future *breach of contract litigation* against Arcesium concerning the actions of Arcesium that implicate DESCO's obligations under the SLSA and the MA. DESCO and Arcesium are thereby in privity as to those causes of action only.

For that reason, any breach of contract claims in the instant case that arise from the same cause of action as the breach of contract claims in the *Arcesium* action are duplicative. *See Expert Elec., Inc. v. Levine*, 554 F.2d 1227, 1232-1233

(2d Cir. 1977) ("Briefly stated, the parties to an action in which a judgment on the

merits has been rendered, or their privies, are barred from relitigating *the same*

*cause of action* in a second proceeding." (emphasis supplied)).  Such claims are

identified and addressed below.  *See infra* Section I.C.  However, DESCO never

agreed to be bound by the determination of issues in a DTSA claim or a state-law

trade secrets claim brought by SS&C against Arcesium.  *See* Am. Compl.  For that

reason, DESCO and Arcesium are not in privity with respect to the instant trade

secrets claims.

The court concludes that the instant trade secrets claims are not duplicative.

Defendant's motion to dismiss is denied as to this point.

### C.    Breach of contract claims

#### 1.    Third claim for relief

The court concludes that plaintiff's third claim for relief (Breach of Contract –

Use of Arcesium as Third Party Service Provider) is not duplicative.

Plaintiff alleges that defendant "has materially breached the SLSA by

engaging Arcesium as its Third Party Service Provider, which violates Section C of

the [MA]."  Am. Compl. ¶ 102.  The amended complaint explains that "Section C of

the [MA] prohibits [DESCO] from engaging a Third Party Service Provider 'that

licenses to financial firms a portfolio accounting engine that competes with any

Advent software product.'"  *Id.* ¶ 103.  Plaintiff alleges that defendant is in breach of

the SLSA because "[d]uring the period that Arcesium has served as Third Party

Service Provider to [DESCO], it also has licensed a software product that competes with Advent's Geneva." *Id.* ¶ 104.

As discussed above, the MA created privity between DESCO and Arcesium with respect to alleged actions of Arcesium that violated DESCO's obligations to SS&C under the SLSA and the MA. *See supra* Section I.B.

Plaintiff's third claim for relief is not such an action. The third claim concerns *DESCO's* alleged actions in direct violation of the MA, not the alleged actions of Arcesium that would in turn bind DESCO under the MA. DESCO did not agree "to be bound by the determination of issues in an action between" Arcesium and SS&C concerning DESCO's engagement of Arcesium as a third-party service provider. *Sacerdote*, 939 F.3d at 506. For that reason, DESCO and Arcesium are not in privity as to the third claim.

The court concludes that plaintiff's third claim for relief is not duplicative. Defendant's motion to dismiss is denied as to this point.

### 2.    Fourth claim for relief

The court concludes that plaintiff's fourth claim for relief (Breach of Contract – Liability for Arcesium's Conduct) is duplicative.

### a.    Privity

Plaintiff alleges that the MA "provides that [DESCO] 'shall remain liable for the acts and omissions of Third Party Service Provider in breach of [DESCO's] rights and obligations under the [SLSA] as if [DESCO] had undertaken such acts

and committed such omissions directly.'" Am. Compl. ¶ 108 (third alteration in original).

Plaintiff alleges also that "Arcesium's acts and omissions breached the SLSA by violating the scope of the license granted to [DESCO] as described in Section 2 of the SLSA and in Section C of the [MA]." *Id.* ¶ 109. Plaintiff explains that "Arcesium's acts and omissions also breached Section 5.1 of the SLSA, which provides that licensee has no ownership rights in Geneva or derivative works based on Geneva, which remain exclusively owned by SS&C." *Id.* Plaintiff alleges also that "Arcesium's acts and omissions . . . breached Sections 5.1 and 6.1 of the SLSA by improperly disclosing SS&C's confidential information and developing a competing software product using its access to Geneva." *Id.* Plaintiff insists that "[a]s a direct and proximate result of these breaches—for which [DESCO] is liable under the [MA]—SS&C has suffered damages in an amount to be determined at trial." *Id.* ¶ 110.

Defendant argues that "DESCO—as a nonparty bound by the determination of issues in the *Arcesium* Action—is in privity with Arcesium." Def. Reply Br. at 3. Defendant explains that "SS&C's Fourth Claim ('Breach of Contract – Liability for Arcesium's Conduct') is predicated on the allegation that DESCO is 'contractually responsible for [Arcesium's] conduct' and 'acted in concert with Arcesium . . . such that [DESCO] . . . direct[ed] and/or authorize[d] Arcesium's conduct.'" *Id.* at 2-3 (alterations in original) (quoting Am. Compl. ¶ 81 n.2).

As discussed above, there is privity between DESCO and Arcesium with respect to alleged actions of Arcesium that violate DESCO's obligations under the SLSA and the MA. *See supra* Section I.B. The breach of contract claim in the *Arcesium* action concerns Arcesium's alleged material breach of the provisions of the HRA that prohibited, inter alia: the derivation of Geneva source code; the creation of derivative works from Geneva; the use of Geneva for Arcesium's own internal data processing operations; the promotion of Geneva to prospective customers following termination of the HRA; the continuing use of Geneva following the termination of the HRA; and the use of SS&C's confidential information for any purpose other than to perform Arcesium's obligations under the HRA. *See* First Am. Compl. ¶¶ 113-117, *Arcesium* action, ECF No. 36. Plaintiff's allegations in the amended complaint before this court hew closely to the above breach of contract allegations of SS&C in the *Arcesium* action. According to plaintiff,

> Arcesium used Geneva trade secrets that it obtained from [DESCO], and to which it had access during the five-year term of the HRA, to develop its own portfolio accounting capabilities, which it has used in competition with SS&C. This is a prohibited use of Geneva under the terms of [DESCO's] Geneva license. [DESCO] is, accordingly, in breach of its Geneva license *because, under the [MA], it is responsible for Arcesium's conduct.*

Am. Compl. ¶ 80 (emphasis supplied); *see also id.* ¶¶ 70a-d.

Accordingly, the court concludes that DESCO and Arcesium are in privity as to plaintiff's fourth claim for relief.

## b.      Same claims and relief

For an action to be duplicative, in addition to privity between the defendants in each action, "there must be the same rights asserted and the same relief prayed for; the relief must be founded upon the same facts, and the title, or essential basis, of the relief sought must be the same." *Sacerdote*, 939 F.3d at 504 (quoting *The Haytian Republic*, 154 U.S. at 124).

"A suit is duplicative of another . . . when 'the same proof is needed to support the claims in both suits or, in other words, whether facts essential to the second suit were present in the first suit.'" *Barclay v. Lowe*, 131 F. App'x 778, 779 (2d Cir. 2005) (quoting *Curtis*, 226 F.3d at 139). Moreover, a suit is duplicative when the "the facts underlying" the claim in the first action are "virtually identical to those supporting" the claim in the second action. *Branded Apparel Grp. LLC v. Muthart*, No. 17 CIV. 5956 (PAE), 2018 WL 4308545, at *3 (S.D.N.Y. Sept. 10, 2018).

However, duplicative litigation "does not require that all aspects of the new and prior suits be identical but rather, focuses on whether the two claims arise from the same 'nucleus of operative fact.'" *Davis v. Norwalk Econ. Opportunity Now, Inc.*, 534 F. App'x 47, 48 (2d Cir. 2013) (quoting *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000)). "To make this determination, a court properly considers 'whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations.'" *Id.* (quoting *Waldman*, 207 F.3d at 108).

Here, the facts underlying the breach of contract claim in the *Arcesium* action and plaintiff's fourth claim are "virtually identical." *Branded Apparel*, 2018 WL 4308545, at *3. Both claims concern the same alleged actions of Arcesium with respect to SS&C's Geneva trade secrets. The primary difference between the claims is that they concern different contracts. The claim in the *Arcesium* action concerns the HRA, whereas the claim in the instant action concerns the SLSA and the MA. *Compare* First Am. Compl. ¶¶ 111-118 , *Arcesium* action, *with* Am. Compl. ¶¶ 106-110. This difference is not sufficient for the court to conclude that the claims do not share the same "nucleus of operative fact." *Waldman*, 207 F.3d at 108. The claims concern the same alleged conduct of Arcesium with respect to Geneva trade secrets during the same time period. "Thus, the two suits would have formed a 'convenient trial unit,' and addressing the two causes of action in one litigation would have 'conform[ed] to the parties' expectations.'"[2] *Davis*, 534 F. App'x at 48 (alteration in original) (quoting *Waldman*, 207 F.3d at 108).

Accordingly, the court concludes that plaintiff's fourth claim for relief is duplicative. Defendant's motion to dismiss is granted as to this point.

---

[2] The court acknowledges that this Court denied plaintiff's motion to consolidate the *Arcesium* action and the instant action in a prior order. *See* Op. & Order, ECF No. 31. However, the denial of the motion to consolidate was due to concerns over the potential "prejudicial effect on defendants" and the "substantial temporal disjuncture of the cases." *Id.* at 9-10. The Court even recognized "that the two actions are related and concern similar parties and similar issues of law and fact." *Id.* at 10.

### 3.    Fifth claim for relief

The court concludes that plaintiff's fifth claim for relief (Breach of Contract – Misappropriation) is not duplicative.

Plaintiff alleges that DESCO "breached the SLSA by improperly developing the [DESCO Applications], licensing those [DESCO Applications] to Arcesium, assisting Arcesium in enhancing and commercializing SS&C's trade secrets, and renewing Arcesium's license for the [DESCO Applications] after the HRA expired." Am. Compl. ¶ 113.

As discussed above, DESCO and Arcesium are not in privity with respect to DESCO's alleged actions in violation of the SLSA and the MA. *See supra* Section I.B. But there is privity between DESCO and Arcesium with respect to alleged actions of Arcesium that violate DESCO's obligations under the SLSA and MA. *See supra* Section I.C.2.a. Plaintiff's fifth claim is an example of the former. Each of the allegations in the fifth claim concerns *DESCO's* actions in violation of the SLSA and the MA, even if they *imply* the participation of Arcesium.

Accordingly, the court concludes that plaintiff's fifth claim for relief is not duplicative. Defendant's motion to dismiss is denied as to this point.

## II.    Statute of limitations

### A.    DTSA claim

### 1.    Legal framework

A plaintiff must commence a DTSA action no later than 3 years after the alleged misappropriation "is discovered or by the exercise of reasonable diligence

should have been discovered."  18 U.S.C. § 1836(d).  In other words, the statute of

limitations period runs from the date on which "plaintiff 'knew or should have

known that the alleged trade secrets were wrongfully acquired, disclosed, or used."

*Zirvi v. Flatley*, 433 F. Supp. 3d 448, 459 (S.D.N.Y. 2020) (quoting *Uni-Systems,*

*LLC v. U.S. Tennis Ass'n, Inc.*, 350 F. Supp. 3d 143, 178 (E.D.N.Y. 2018)), *aff'd*, 838

F. App'x 582 (2d Cir. 2020).

"The rule 'in the statute of limitations context is that dismissal is appropriate

only if a complaint clearly shows the claim is out of time.'"  *Medcenter Holdings Inc.*

*v. WebMD Health Corp.*, No. 1:20-CV-00053 (ALC), 2021 WL 1178129, at *5

(S.D.N.Y. Mar. 29, 2021) (quoting *Harris v. City of N.Y.*, 186 F.3d 243, 250 (2d Cir.

1999)).

### 2.    Analysis

The court concludes that plaintiff's DTSA claim is not time-barred.

Plaintiff first asserted its DTSA claim on October 18, 2023, when it filed the

complaint.  *See* Compl.  For that reason, the claim is timely if plaintiff "discovered

or by the exercise of reasonable diligence should have . . . discovered" defendant's

alleged misappropriation no earlier than October 18, 2020.  18 U.S.C. § 1836(d).

The following facts are considered true for purposes of deciding the motion to

dismiss.  *See Olson*, 29 F.4th at 71 (stating that courts are required to "accept[] all

factual allegations in the complaint as true and draw[] all reasonable inferences in

favor of the plaintiff"); *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).

Before founding Arcesium, DESCO "secretly developed" the DESCO

Applications.  Am. Compl. ¶ 64.  The DESCO Applications were "tightly integrated"

with Geneva and "derived from[] and used" Geneva trade secrets.  *Id.* ¶ 65.  DESCO

later "spun off into Arcesium the technology groups that created the [DESCO]

Applications."  *Id.* ¶ 67.  DESCO then licensed the DESCO Applications to Arcesium

"for the purpose of Arcesium exploiting the technology in the marketplace."  *Id.*

Arcesium has used the DESCO Applications continuously since 2015.  *Id.* ¶ 70a.

In 2015, Advent and Arcesium entered into the HRA.  *Id.* ¶ 55.  At no point

during the HRA negotiations did DESCO or Arcesium disclose to SS&C that the

DESCO Applications were "derived from and incorporated Geneva trade secrets."

*Id.*  Instead, DESCO and Arcesium "explained Arcesium's value proposition to the

market as delivering ancillary services to Geneva customers, making the ability to

resell Geneva valuable to both Arcesium (and [DESCO], as its parent) and Advent."

*Id.*  Under the HRA, Arcesium offered customers a "single, integrated solution

where Geneva was deployed alongside, and integrated with, Arcesium's solutions . .

. to handle all aspects of the customer's post-trade tasks."  *Id.* ¶ 56.

Defendant argues that the amended complaint "makes clear that SS&C

knew, or by exercise of reasonable diligence should have known, of DESCO's alleged

misconduct by 2014 but no later than 2015."  Def. Br. at 11.  Defendant asserts

specifically that the discussions between DESCO and Advent leading up to the MA

"started the clock" on the statute of limitations.  *Id.* at 12.  According to defendant,

"SS&C itself admits that it gained a detailed understanding of both [the DESCO

Applications] and DESCO's plans for Arcesium during the discussions between

DESCO and SS&C *nearly a decade ago.*"  *Id.* at 4 (citing Am. Compl. ¶ 56).

"[D]rawing all reasonable inferences in the plaintiff's favor," the court is

unable to conclude that plaintiff should have discovered defendant's alleged

misappropriation prior to October 2020.  *Harris*, 572 F.3d at 71.

Defendant alleges that, in 2014, "SS&C learned about the [DESCO

Applications], how that technology integrated with SS&C's own Geneva product,

and how Arcesium would offer that integrated package to customers."  Def. Br. at

12.

But the amended complaint states only that plaintiff was aware that

"Arcesium offered customers a single, integrated solution where Geneva was

deployed alongside, and integrated with, Arcesium's solutions . . . to handle all

aspects of the customer's post-trade tasks."  Am. Compl. ¶ 56.  The amended

complaint acknowledges that the DESCO Applications were "tightly integrated with

Geneva," *id.* ¶ 65, but there is no indication that defendant could have developed

such "tightly integrated," "ancillary services" only with the use of Geneva trade

secrets.  *See id.*

Indeed, plaintiff alleges that the "post-trade solutions" that parties discussed

in the HRA negotiations "are commonly provided by firms in the industry that

developed their technology independently from SS&C, and SS&C had no reason to

suspect that Arcesium's technology had actually been developed by [DESCO] by

copying Geneva trade secrets and otherwise misusing its access to Geneva trade

secrets." *Id.* ¶ 83b.  The court is unable to conclude that plaintiff "knew or should have known that the alleged trade secrets were wrongfully acquired, disclosed, or used" where defendant hid the alleged misappropriation and described only "post-trade solutions" common to the industry.  *See Zirvi*, 433 F. Supp. 3d at 459.

Defendant relies on *AT Engine Controls Ltd. v. Goodrich Pump & Engine Control Sys., Inc.*, 637 F. App'x 645 (2d Cir. 2016), in support of the proposition that "[r]egardless of SS&C's impression of Arcesium, SS&C *still* had a duty to exercise reasonable diligence."  Def. Reply Br. at 5.  But *AT Engine Controls* is not apposite.

First, that decision concerned a statute of limitations defense at the *summary judgment* stage.  *See AT Engine Controls*, 637 F. App'x at 646.  The court concluded that plaintiff failed to exercise reasonable diligence only upon consideration of the record developed before it.  *See id.*  By contrast, at the motion to dismiss stage, "dismissal is appropriate only if a complaint *clearly* shows the claim is out of time." *Medcenter Holdings*, 2021 WL 1178129, at *5 (emphasis supplied).  In the instant case, the amended complaint describes meetings in which plaintiff learned of the DESCO Applications.  However, the extent to which plaintiff "gained a detailed understanding" of the DESCO Applications is unclear.  Def. Br. at 4.  As discussed, there is nothing on the face of the amended complaint that indicates that plaintiff suspected or had reason to suspect defendant's alleged misappropriation prior to October 2020.

Second, the facts in *AT Engine Controls* are distinct.  In determining that the plaintiff had a duty to exercise reasonable diligence, the *AT Engine Controls* court

considered that: (1) plaintiff knew that defendant's device "appeared physically to be a 'direct copy'" of the device parties developed together; (2) plaintiff had sought legal counsel on asserting intellectual property rights against defendant; (3) there were writings in which plaintiff demonstrated suspicion that defendant misappropriated trade secrets; and (4) there was a writing in which an officer of the plaintiff corporation stated that defendant "cloned some of the design" from the device that parties developed jointly. *AT Engine Controls*, 637 F. App'x at 649-650. Here by contrast, there is no description of plaintiff's learning process in the cited sections of the amended complaint despite defendant's assertion that plaintiff learned "*how* [the DESCO Applications] integrated with SS&C's own Geneva product." Def. Br. at 12 (emphasis supplied); *see* Am. Compl. ¶ 55-56.

In the alternative, defendant argues that the "limitations clock" would have started no later than the 2015 public announcement of the Arcesium "product offering—based on DESCO technology—that forms the basis of SS&C's claims." Def. Br. at 12. Defendant insists that at the time of the public announcement, "SS&C discovered, or should have discovered with reasonable diligence, any claims based on that DESCO technology." *Id.*

Defendant's argument is unpersuasive. DESCO's public announcement of the launch of Arcesium describes the DESCO Applications in general terms. *See, e.g.*, Decl. of Steven M. Balcof in Supp. of Def.'s Mot. to Dismiss the Am. Compl. and Related Ex. Filings, Ex. A, ECF No. 41 ("The Arcesium platform supports all aspects of the trade life cycle after a trade is executed, including trade capture,

asset servicing, collateral management, pricing-related services and portfolio data warehousing."); *id.* ("It's designed so a single platform can cover a wide range of asset classes and geographies and can deal with the performance or scale requirements that customers have."); *id.* ("By 2013 [DESCO] had created a highly automated, exceptions-driven platform . . . ."); *id.* ("Arcesium's platform combines software and service. . . . [The] platform was also designed to be modular.  Asset managers can pick and choose which parts they want to use, including trade capturing, treasury and portfolio accounting.").[3]  There is nothing in the announcement that would have, or should have, alerted plaintiff to the alleged misappropriation of Geneva trade secrets.

Accordingly, the court is unable to conclude that plaintiff "discovered or by the exercise of reasonable diligence should have . . . discovered" defendant's alleged misappropriation before October 18, 2020.  18 U.S.C. § 1836(d).  Defendant's motion to dismiss is denied as to this point.

---

[3] "For purposes of a [Rule] 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination.'"  *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006) (quoting Fed. R. Evid. 201(b)); *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015).

### B.    State-law trade secrets claim

#### 1.    Legal framework

A trade secrets misappropriation claim under New York law is subject to a three-year statute of limitations.  N.Y. C.P.L.R. § 214(4); *see CSFB HOLT LLC v. Collins Stewart Ltd.*, 2004 WL 1794499, at *8 (S.D.N.Y. Aug. 10, 2004); *see also Zirvi*, 433 F. Supp. 3d at 460.

"Under New York law, when a trade secret misappropriation claim accrues depends on what the party alleged to have committed the misappropriation did with the information."  *CSFB HOLT*, 2004 WL 1794499, at *8 (quoting *Bausch & Lomb Inc. v. Alcon Lab'ys, Inc.*, 64 F. Supp. 2d 233, 247 (W.D.N.Y. 1999)).  Specifically, "[i]f a party misappropriates and publicly discloses a trade secret, the claim accrues upon disclosure.  If, however, the party keeps the secret confidential yet makes use of it to his own commercial advantage, each successive use constitutes a new actionable tort for purposes of the statute of limitations."  *Id.*  When "there does not appear to be an allegation of public disclosure on the face of" the complaint, any use of plaintiff's trade secrets "within the three years preceding the filing of the instant action will satisfy the statute of limitations."  *Id.*

#### 2.    Analysis

The court concludes that plaintiff's state-law trade secrets claim is not time-barred.

In the instant case, "there does not appear to be an allegation of public disclosure on the face of" the amended complaint.  *Id.*; *see* Am. Compl.  For that

reason, any use of plaintiff's trade secrets "within the three years preceding the filing of the instant action" on October 18, 2023, "will satisfy the statute of limitations." *CSFB HOLT*, 2004 WL 1794499, at *8.

Defendant argues that because plaintiff "failed to adequately plead reasonable diligence, its New York common law trade secret claim accrued in 2014-2015, the limitations period was not tolled, and the claim is untimely." Def. Reply Br. at 5.

Plaintiff argues that its state-law claim "satisf[ies] the continuing tort doctrine because the Amended Complaint alleges that [DESCO] affirmatively kept secret its misappropriation of the Geneva trade secrets and continues to utilize them for its own commercial advantage both on its own and through its licensing relationship with Arcesium." Pl. Br. at 15 (citing Am. Compl. ¶¶ 70-71).

As discussed above, the court is unable to conclude that plaintiff knew or should have known of defendant's alleged misappropriation prior to the statute of limitations period. *See supra* Section II.A.2. For that reason, the continuing tort doctrine applies to the state-law trade secrets claim. *See Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 50 (2d Cir. 2019) ("Where, however, the plaintiff had knowledge of the defendant's misappropriation and use of its trade secret, the continuing tort doctrine does not apply." (internal quotation marks omitted) (quoting *PaySys Int'l, Inc. v. Atos Se*, No. 14-CV-10105 (KBF), 2016 WL 7116132, at *9 (S.D.N.Y. Dec. 5, 2016))). And reading the amended complaint's "factual allegations to be true and drawing all reasonable inferences in the

plaintiff's favor," the court is unable to conclude that plaintiff's state-law claim accrued before October 18, 2020. *Harris*, 572 F.3d at 71.

According to the amended complaint, "[a]fter the HRA expired on January 10, 2020, [DESCO] renewed its license of the [DESCO Applications] to Arcesium, and Arcesium continues to use those applications, including in competition against SS&C, as a core part of its customer offering *to this day*." Am. Compl. ¶ 70a. (emphasis supplied). Moreover, DESCO: (1) "continu[es] to license the [DESCO Applications] to Arcesium"; (2) "continu[es], in its capacity as an Arcesium customer, to use software products (such as the Interface Application and other aspects of Arcesium's platform) that are based on and derived from Geneva trade secrets"; and (3) "obtain[s], as Arcesium's majority owner, a substantial portion of the commercial value created by Arcesium's exploitation of SS&C trade secrets in the marketplace." *Id.* ¶ 73.

Given that "each successive use constitutes a new actionable tort for purposes of the statute of limitations," *CSFB HOLT*, 2004 WL 1794499, at *8, DESCO's continuing alleged misappropriation of trade secrets keeps plaintiff's state-law claim well within the three-year statute of limitations period. Accordingly, defendant's motion to dismiss is denied as to this point.

### C.    Breach of contract claims

#### 1.    Legal framework

The statute of limitations on a breach of contract claim is six years under

New York law.  *See* N.Y. C.P.L.R. § 213(2); *Guilbert v. Gardner*, 480 F.3d 140, 149

(2d Cir. 2007).

"A cause of action for breach of contract ordinarily accrues and the

limitations period begins to run upon breach."  *Guilbert*, 480 F.3d at 149.  The

plaintiff need not be aware of the breach for the statute of limitations to begin to

run.  *Id.*  But "where a contract provides for continuing performance over a period of

time, each breach may begin the running of the statute anew such that accrual

occurs continuously."  *Miller v. Metro. Life Ins. Co.*, 979 F.3d 118, 122 (2d Cir. 2020).

#### 2.    Analysis

##### a.    Third claim for relief

The court concludes that plaintiff's third claim for relief (Breach of Contract –

Use of Arcesium as Third Party Service Provider) is not time-barred.

Plaintiff alleges that DESCO "has materially breached the SLSA by engaging

Arcesium as its Third Party Service Provider, which violates Section C of the [MA]."

Am. Compl. ¶ 102.  According to plaintiff, "Section C of the [MA] prohibits [DESCO]

from engaging a Third Party Service Provider 'that licenses to financial firms a

portfolio accounting engine that competes with any Advent software product.'"  *Id.* ¶

103.

In 2015, DESCO engaged Arcesium as its third-party service provider pursuant to the MA.  *Id.* ¶¶ 75-76.  But it was not until "the second half of 2020" that "Arcesium began licensing its own competing portfolio accounting engine to customers."  *Id.* ¶ 78.  "[A]ccepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff," the court concludes that the statute of limitations period on the third claim did not begin to accrue until the second half of 2020.  *Olson*, 29 F.4th at 71.  The second half of 2020 is located squarely within the statute of limitations period of six years for contractual claims.

For that reason, the court is unable to conclude that plaintiff's third claim for relief is time-barred.  Defendant's motion to dismiss is denied as to this point.

### b.    Fifth claim for relief

The court concludes that plaintiff's fifth claim for relief (Breach of Contract – Misappropriation) is not time-barred.

Plaintiff alleges that DESCO "breached the SLSA by improperly developing the [DESCO Applications], licensing those [DESCO Applications] to Arcesium, assisting Arcesium in enhancing and commercializing SS&C's trade secrets, and renewing Arcesium's license for the [DESCO Applications] after the HRA expired."  Am. Compl. ¶ 113.  Plaintiff invokes the continuing wrong doctrine and argues that the fifth claim is "timely because the SLSA requires continuing performance and [DESCO's] violations . . . constitute repeated, successive breaches that continued well into the limitations period."  Pl. Br. at 16.

Defendant argues that "the [continuing wrong] doctrine is inapplicable where, as here, there is one tortious act complained of (i.e., misappropriation) since the cause of action accrues at the time that the wrongful act first injured plaintiff and it does not change as a result of continuing consequential damages." Def. Reply Br. at 7 (cleaned up) (quoting *Henry v. Bank of Am.*, 48 N.Y.S. 3d 67, 70 (N.Y. App. Div. 2017)).

"[I]n New York, '[d]espite the general principle that a cause of action accrues when the wrong is done, regardless of when it is discovered, certain wrongs are considered to be continuing wrongs, and the statute of limitations, therefore, runs from the commission of the last wrongful act.'" *Leonhard v. United States*, 633 F.2d 599, 613 (2d Cir. 1980); *see also Myers Indus., Inc. v. Schoeller Arca Sys., Inc.*, 171 F. Supp. 3d 107, 119 (S.D.N.Y. 2016) ("The continuing wrong doctrine 'is usually employed where there is a series of continuous wrongs and serves to toll the running of a period of limitations to the date of the commission of the last wrongful act.'" (quoting *Selkirk v. State*, 671 N.Y.S. 2d 824, 825 (N.Y. App. Div. 1998)); *Neufeld v. Neufeld*, 910 F. Supp. 977, 982 (S.D.N.Y. 1996). To that end, if "a contract requires continuing performance over a period of time, each successive breach may begin the statute of limitations running anew." *Faulkner v. Arista Recs. LLC*, 602 F. Supp. 2d 470, 478 (S.D.N.Y. 2009); *LiveIntent, Inc. v. Naples*, 293 F. Supp. 3d 433, 442 (S.D.N.Y. 2018).

In 2003, parties entered into the SLSA. *See* Am. Compl. ¶ 46. In 2014, parties amended the SLSA via the MA. *Id.* ¶ 50. The amended complaint does not

indicate whether parties agreed on set duration terms for the SLSA. *See id.* However, SS&C and Arcesium did agree on such terms for the HRA. *See id.* ¶ 60 ("The term of the HRA was five years, after which either party had the right to not renew the agreement.").

Further, the amended complaint indicates that the SLSA has not lapsed. Specifically, the amended complaint alleges that "Arcesium *continues* to be a Third Party Service Provider to [DESCO] within the meaning of the [MA]," which suggests that the MA (an amendment to the SLSA) is still in effect. *Id.* ¶ 77 (emphasis supplied); *see also id.* ¶ 78 (alleging that DESCO "*has been* in material breach of the [MA] since at least the second half of 2020 because [DESCO] *has* employed Arcesium as a Third Party Service Provider at the same time that Arcesium *has been* licensing a portfolio accounting engine that competes with Geneva." (emphases supplied)). The open-ended time period for performance under the SLSA, coupled with the fact that the SLSA contemplates a variety of continuing obligations between the parties, *see id.* ¶ 113, demonstrate that the SLSA "requires continuing performance over a period of time" such that "each successive breach . . . begin[s] the statute of limitations running anew." *Faulkner*, 602 F. Supp. 2d at 478.

Here, the "last wrongful act" among plaintiff's allegations occurred as late as 2020. *Leonhard*, 633 F.2d at 613. In setting out the fifth claim, plaintiff alleges that DESCO "breached the SLSA by . . . renewing Arcesium's license for the [DESCO Applications] after the HRA expired." Am. Compl. ¶ 113. And, according to the amended complaint, "the HRA expired on January 10, 2020." *Id.* ¶ 60.

Reading the amended complaint's "factual allegations to be true and drawing

all reasonable inferences in the plaintiff's favor," the court is unable to conclude

that plaintiff's fifth claim for relief accrued before October 2017.  *Harris*, 572 F.3d at

71.  Any post-HRA renewal would fall well within the six-year statute of limitations

period for contractual claims.[4]  Defendant's motion to dismiss is denied as to this

point.

## III.   The pleading of actionable trade secrets

### A.   DTSA claim

#### 1.   Legal framework

To state a claim for trade secret misappropriation under the DTSA, "a

plaintiff must plausibly allege that (1) it possessed a trade secret, and (2) the

defendant misappropriated the trade secret."  *Medidata Sols., Inc., v. Veeva Sys.*

*Inc.*, No. 17 CIV. 589 (LGS), 2018 WL 6173349, at *3 (S.D.N.Y. Nov. 26, 2018); *see*

18 U.S.C. § 1836.

The DTSA defines a trade secret as information that its owner "has taken

reasonable measures to keep . . . secret" that "derives independent economic value,

actual or potential, from not being generally known to, and not being readily

---

[4] The court notes that the "last wrongful act" among plaintiff's allegations could
have occurred even later than 2020 if DESCO's continuing relationship with
Arcesium provided for opportunities to "assist[] Arcesium in enhancing and
commercializing SS&C's trade secrets" in specific instances between 2020 and the
filing of the instant action in 2023.  Am. Compl. ¶ 113.  Regardless, defendant's
alleged actions fall well within the six-year statute of limitations period.

ascertainable through proper means by, another person who can obtain economic

value from the disclosure or use of the information." 18 U.S.C. § 1839(3).

In addition to the statutory requirements, a plaintiff is required to plead its

trade secrets with sufficient specificity. "Although the Second Circuit has not

expressly articulated a specificity requirement, district courts in this circuit

routinely require that plaintiffs plead their trade secrets with sufficient specificity

to inform the defendants of what they are alleged to have misappropriated."

*Medidata*, 2018 WL 6173349, at *3.

"At the pleading stage, a plaintiff must do little more than describe the

[trade] secret with sufficient specificity that its protectability can be assessed."

*DFO Glob. Performance Com. Ltd. (Nev.) v. Nirmel*, No. 20-CV-6093 (JPO), 2021

WL 3475596, at *4 (S.D.N.Y. Aug. 6, 2021) (alteration in original) (internal

quotation marks omitted). "To that end, the plaintiff should include allegations

regarding the information's value and the ease with which the information can be

acquired." *Id.*

Courts in this district "have 'accepted relatively general descriptions of

alleged [trade] secrets at the motion to dismiss stage.'" *Ad Lightning Inc. v.

Clean.io, Inc.*, No. 19-CV-7367 (JPO), 2020 WL 4570047, at *2 (S.D.N.Y. Aug. 7,

2020) (quoting *Island Intell. Prop., LLC v. StoneCastle Asset Mgmt. LLC*, 463 F.

Supp. 3d 490, 500 (S.D.N.Y. 2020)); *see also Tesla Wall Sys., LLC v. Related Cos.,

L.P.*, No. 17-CV-5966 (JSR), 2017 WL 6507110, at *9 (S.D.N.Y. Dec. 18, 2017). But

mere allegations of the "existence of general *categories* of confidential information,

without providing any details to generally define the trade secrets at issue," do not

give rise to a plausible trade secret claim. *Elsevier Inc. v. Dr. Evidence, LLC*, No.

17-CV-5540 (KBF), 2018 WL 557906, at *6 (S.D.N.Y. Jan. 23, 2018) (internal

quotation marks omitted). The pleadings "must put forth specific allegations as to

the information owned, such that the opposing party is given fair notice of the

claim." *Ad Lightning*, 2020 WL 4570047, at *2 (internal quotation marks omitted)

(quoting *Island Intell. Prop., LLC*, 463 F. Supp. 3d at 500).

## 2.    Analysis

The court concludes that plaintiff has pleaded successfully the existence of

actionable trade secrets.

Defendant argues that "none of th[e] [Geneva] information, as alleged,

qualifies as a protectable trade secret for at least the following two reasons: (1)

certain of SS&C's asserted trade secrets are not sufficiently identified because they

are merely vaguely defined Geneva software functionalities; and (2) certain of

SS&C's asserted trade secrets are not sufficiently identified because the information

is indistinguishable from general knowledge." Def. Br. at 20. With respect to the

first point, defendant insists that plaintiff "fails to provide any additional detail

regarding th[e] [Geneva] functionalities or distinguish them from functionalities

available in other accounting software." *Id.* at 21. With respect to the second point,

defendant argues that "SS&C fails to delineate where generally accepted accounting

practices used by its software end and its trade secrets supposedly begin." *Id.* at 22.

Even though plaintiff does allege a lengthy list of "general categories of information," *Elsevier*, 2018 WL 557906, at \*6, plaintiff provides additional detail regarding the composition and functionality of each of the items listed. *See, e.g.*, Am. Compl. ¶ 28 (explaining that the executable version of the Geneva software "is made up of object code, which, when executed, performs proprietary portfolio accounting functions"); *id.* ¶ 31 ("Geneva's Browse utility . . . provides a graphical user interface that visually illustrates the unique and proprietary structure, sequence, and organization of the Geneva Data Model."); *id.* ("Geneva's Data Browser tool . . . provides a graphical user interface that allows Geneva users to create queries and reports, and provides corresponding source code that identifies the relevant data attributes in Geneva's Data Model."); *id.* ¶ 33 ("Geneva's RSL database query language and Query Language . . . are proprietary programming languages that are unique to Geneva and can be used to extract data by identifying specific data attributes and/or data classes in the Geneva Data Model.").

As such, plaintiff's allegations are neither "nebulous" nor pleaded only at the "highest level of generality." *Ad Lightning*, 2020 WL 4570047, at \*2; *see also Elsevier*, 2018 WL 557906, at \*6 (granting dismissal where plaintiff alleged general categories of confidential information such as "clinical methods," "interpretation of data," "process to assess the quality of evidence" and "data configuration protocols and methods"). In considering the level of detail that courts have viewed as either inadequately general or sufficiently specific, plaintiff's allegations fall into the latter category.

Accordingly, the court concludes that plaintiff describes the alleged Geneva trade secrets with sufficient specificity. Defendant's motion to dismiss is denied as to this point.[5]

---

[5] Because defendant confined its arguments to the first element of plaintiff's DTSA claim, the possession of trade secrets, the court declines to consider whether plaintiff failed to plead the second element, misappropriation of those trade secrets. *See Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) ("Though the district court has the power to dismiss a complaint sua sponte for failure to state a claim on which relief can be granted, it may not properly do so without giving the plaintiff an opportunity to be heard."); *Grant v. Cty. of Erie*, 542 F. App'x 21, 24 (2d Cir. 2013); *Piuggi v. Good for You Prods. LLC*, 739 F. Supp. 3d 143, 156 (S.D.N.Y. 2024). Dismissing the DTSA claim despite defendant's silence as to the second element would deprive plaintiff "notice of the grounds for dismissal and an opportunity to be heard" because plaintiff would not have been able to mount a response. *Grant*, 542 F. App'x at 24.

Moreover, "Rule 12(b)(6) places the burden on the moving party to show that the complaint is legally insufficient." *Ctr. for Biological Diversity v. McAleenan*, 404 F. Supp. 3d 218, 234 (D.D.C. 2019) (cleaned up) (quoting *Cohen v. Bd. of Trustees of the Univ. of the Dist. of Columbia*, 819 F.3d 476, 481 (D.C. Cir. 2016)); *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020) ("It is the defendant's burden to establish the complaint's insufficiency."); *see also* Wright & Miller § 1357 (4th ed.) ("Ultimately, the burden is on the moving party to prove that no legally cognizable claim for relief exists."). By declining to raise arguments as to the second element, defendant has failed to meet its burden here.

## B.    State-law trade secrets claim

"Because the elements for a misappropriation claim under New York law are fundamentally the same as a DTSA claim, courts have found that a complaint sufficiently pleading a DTSA claim also states a claim for misappropriation of trade secrets under New York law." *Catalyst Advisors, L.P. v. Catalyst Advisors Invs. Glob. Inc.*, 602 F. Supp. 3d 663, 671 (S.D.N.Y. 2022) (cleaned up) (quoting *Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020)); *My Mavens, LLC v. Grubhub, Inc.*, No. 20 CIV. 4657 (PGG), 2023 WL 5237519, at *18 (S.D.N.Y. Aug. 14, 2023).

As discussed, the amended complaint "sufficiently plead[s] a DTSA claim." *See Catalyst Advisors*, 602 F. Supp. 3d at 671.  The court concludes accordingly that the amended complaint "also states a claim for misappropriation of trade secrets under New York law." *Id.*  Defendant's motion to dismiss the state law trade secrets claim is denied.

## IV.    Protective order

Finally, defendant asks the court to "strike each of SS&C's allegations (Am. Compl. ¶¶ 83-85) that use or rely on information SS&C obtained from discovery in the *Arcesium* action." Def. Br. at 14-15.

The Court in *Arcesium* issued a protective order that governed discovery in that action.  *See* Confidentiality Stipulation and Protective Order ("*Arcesium* Protective Order"), *Arcesium* action, ECF No. 29.  Paragraph 4.1 of the *Arcesium* Protective Order provides that:

> A Receiving Party may use Discovery Material only in connection with this litigation, captioned as *SS&C Technologies Holdings, Inc. and Advent Software, Inc. v. Arcesium LLC*, Case No: 22-cv-2009 (VEC), including for prosecuting, defending, or attempting to settle it. A Receiving Party may not use Discovery Material for any other reason, including, but not limited to in connection with other litigation (including related actions) unless the Producing Party agrees in writing. Protected Material may be disclosed only to the categories or persons and under the conditions described in this Protective Order. Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Protective Order.

*Id.* ¶ 4.1.

Defendant argues that "[n]otwithstanding that provision, SS&C makes new allegations in the Amended Complaint that improperly include and rely on confidential Arcesium discovery from the *Arcesium* action." Def. Br. at 14. Defendant insists that "[b]ecause SS&C based its allegations on protected information produced in the *Arcesium* action and did so *without* written consent from Arcesium or moving to modify the protective order, SS&C violated the *Arcesium* protective order." *Id.* Defendant's arguments are not persuasive.

In a prior antitrust lawsuit between SS&C and Arcesium, this Court concluded that SS&C could file a separate action for misappropriation of trade secrets based on discovery in the antitrust action despite the existence of a protective order. *See Arcesium LLC v. Advent Software, Inc.* ("*Arcesium Antitrust*"), No. 1:20-CV-04389 (MKV), 2022 WL 621973, at *6 (S.D.N.Y. Mar. 3, 2022). The Court explained that the protective order "prevents [SS&C] from using any information they obtained from this litigation outside of this case, but pursuant to

[FRCP] 11, a party may file a pleading with factual allegations that the filing party certifies 'will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.'" *Id.* (quoting Fed. R. Civ. P. 11(b)(3)). The Court went on the explain that "it would be a perversion if the effect of the Protective Order shielded a party who committed a clear breach from a subsequent lawsuit from an aggrieved plaintiff. Though [SS&C] cannot cite to or quote any evidence obtained under the Protective Order, [SS&C is] free to file a new and separate suit so long as such filing complies with [FRCP] 11." *Id.*; *see also In re ServiCom, LLC*, No. 18-31722 (AMN), 2022 WL 1272136, at *2 (Bankr. D. Conn. Apr. 27, 2022).

In sum, plaintiff may *base* allegations in the instant action on discovery from the *Arcesium* action, but it may not *use* that discovery in the instant action.

Not one of the allegations in ¶¶ 83-85 of the amended complaint "cite[s] to or quote[s]" *Arcesium* discovery material. *See* Am. Compl. ¶¶ 83-85; *Arcesium Antitrust*, 2022 WL 621973, at *6. Plaintiff did paraphrase some discovery material in the original version of the amended complaint, but such paraphrasing was later redacted in a January 2024 order. *See* Order, ECF No. 36. The current, redacted version of the amended complaint describes the timeline of the discovery and its role in the instant action but does not delve into discovery material in any detail. *See id.*

Accordingly, the court concludes that plaintiff's allegations in the amended complaint, though based on discovery in other litigation, do not violate the *Arcesium* Protective Order. Further, plaintiff demonstrated through its pleadings that such

allegations "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3); *see Arcesium Antitrust*, 2022 WL 621973, at \*6. Defendant's request to strike the allegations in ¶¶ 83-85 of the amended complaint is denied.

**CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss is GRANTED in part and DENIED in part.

The Clerk of Court is respectfully directed to terminate the open motions at ECF Nos. 22 and 37.

SO ORDERED.


                                        <u>/s/ Timothy M. Reif</u>
Dated: June 5, 2025                     Timothy M. Reif, Judge
New York, New York                      United States Court of International Trade
                                        *Sitting by Designation*
                                        United States District Court for the
                                        Southern District of New York