UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| SS&C TECHNOLOGIES HOLDINGS, INC. AND ADVENT SOFTWARE, INC., <br><br> Plaintiffs, <br><br> v. <br><br> D.E. SHAW & CO., L.P., <br><br> Defendant. | 23-CV-09158-TMR-OTW <br><br> **OPINION & ORDER** |

Dated: February 6, 2026

Stephen Fishbein, John A. Nathanson, Christopher L. LaVigne, Eric S. Lucas and Benjamin Klebanoff, Allen Overy Shearman Sterling US LLP, of New York, N.Y., for plaintiffs SS&C Technologies Holdings, Inc. and Advent Software, Inc.

John M. Desmarais, Steven M. Balcof, Justin P.D. Wilcox and Marie E. Weisfeiler, Desmarais LLP, of New York, N.Y., Washington, D.C. and San Francisco, CA, for defendant D.E. Shaw & Co., L.P.

TIMOTHY M. REIF, Judge, United States Court of International Trade, Sitting by Designation:

SS&C Technologies Holdings, Inc. ("SS&C") and Advent Software, Inc. ("Advent") (collectively, "plaintiff") bring the instant action against D.E. Shaw & Co., L.P. ("DESCO," or "defendant"), alleging: (1) violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 et seq.; (2) common law misappropriation of trade secrets; and (3) breach of contract. *See* Am. Compl. ¶¶ 86-114, ECF No. 32.

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure ("FRCP"), defendant moves for judgment on the pleadings as to Counts I and II of the

Court No. 23-CV-09158                                                      Page 2

amended complaint.  Not. of Def.'s Mot. for J. on the Pleadings ("Def. Mot."), ECF

No. 76; Mem. of Law in Supp. of Def.'s Mot. for J. on the Pleadings ("Def. Br."), ECF

No. 77; Reply Mem. of Law in Supp. of Def.'s Mot. for J. on the Pleadings ("Def.

Reply Br."), ECF No. 97.

 For the reasons discussed below, the court grants defendant's motion.

**BACKGROUND**

**I.    Parties in the instant action**

 Plaintiff is a global business that provides specialized software and software-

enabled services to the financial services industry.  Am. Compl. ¶¶ 8, 14.  Plaintiff

has several subsidiaries and affiliates, including Advent, which SS&C acquired in

2015.  *Id.* ¶ 9.

 Defendant is a large asset manager that manages a range of investments for

its customers.  *Id.* ¶ 15.

**II.    Factual and procedural background**

 The court presumes familiarity with the facts as set out in *SS&C*

*Technologies Holdings, Inc. v. D.E. Shaw & Co., L.P.* ("*DESCO*"), No. 23-CV-09158

(TMR), 2025 WL 1591012, at *1-3 (S.D.N.Y. June 5, 2025).

 On June 5, 2025, this Court granted in part and denied in part defendant's

motion to dismiss pursuant to FRCP 12(b)(6).  *See id.* at *17.

 On July 17, 2025, defendant filed its answer to the amended complaint along

with five counterclaims.  *See* Def.'s Answer to Pls.' Am. Compl., ECF No. 70; Def.'s

Countercls. ("Countercls."), ECF No. 70.

Court No. 23-CV-09158                                                    Page 3

On August 25, 2025, defendant moved for judgment on the pleadings as to Counts I and II of the amended complaint. *See* Def. Mot.; Def. Br.  On September 22, 2025, plaintiff filed its response brief. *See* Mem. of Law in Opp'n to Def.'s Mot. for J. on the Pleadings ("Pl. Br."), ECF No. 90.  On September 29, 2025, defendant filed its reply brief. *See* Def. Reply Br.

## STANDARD OF REVIEW

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemp. Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001).  Specifically, "the 'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *1-800 Contacts, Inc. v. JAND, Inc.*, 119 F.4th 234, 246 (2d Cir. 2024) (quoting *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Courts "are not to give effect to a complaint's assertions of law or legal conclusions couched as factual allegations; we are to accept well pleaded factual assertions as true; and we are to draw all reasonable factual inferences in favor of the plaintiff." *Lynch v. City of New York*, 952 F.3d 67, 75-76 (2d Cir. 2020).  For that reason, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Court No. 23-CV-09158                                              Page 4

## DISCUSSION

### I.     Ripeness

The court concludes that the instant motion is procedurally proper.

FRCP 12(c) states that "[a]fter the pleadings are closed . . . a party may move for judgment on the pleadings."  FRCP 7(a) lists the following as permissible pleadings: (1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer.

Plaintiff argues that defendant's motion is premature because plaintiff had not yet filed an answer to the counterclaims when defendant filed the instant motion.  Pl. Br. at 5-6.  Plaintiff explains that a "motion for judgment on the pleadings may be considered only '[a]fter the pleadings are closed'" and that the "Rules prescribe that permissible pleadings include 'an answer to a counterclaim designated as a counterclaim.'"  *Id.* at 5 (alteration in original) (quoting Fed. R. Civ. P. 12(c); *id.* 7(a)(3)).

Defendant responds that its motion is ripe because the pertinent pleadings are closed.  Def. Reply Br. at 1.  Defendant explains that "when a Rule 12(c) motion is directed to claims for which the pleadings have closed, courts in this District and others interpret Rule 12(c) to require that only the pleadings pertinent to the motion be closed."  *Id.* (citing *Gilman v. Spitzer*, 902 F. Supp. 2d 389, 394 n.3 (S.D.N.Y. 2012)).  Defendant relies on *Gilman* for this proposition.

Court No. 23-CV-09158                                                    Page 5

In *Gilman*, the plaintiff asserted a defamation claim and the defendants

asserted an anti-SLAPP[1] counterclaim.  *Gilman*, 902 F. Supp. 2d at 393-94.  The

plaintiff then moved to dismiss the anti-SLAPP counterclaim on the grounds that

the statute was inapplicable. *See id.* at 394.  The defendants, "having filed their

Answer and Counterclaim, move[d] for judgment on the pleadings pursuant to

[FRCP] 12(c)."  *Id.*  The plaintiff argued that "the 'pleadings' [were] not 'closed'

because Gilman ha[d] not filed an answer to Defendants' counterclaim under the

anti-SLAPP statute; instead, he . . . moved to dismiss that counterclaim."  *Id.* at 394

n.3.  Like plaintiff here, the plaintiff in *Gilman* argued that the defendants' motion

was "premature."  *Id.*

> The Court in *Gilman* reasoned that:
>
> The better interpretation of [FRCP 12(c)] is that the "pleadings are
> closed" in the relevant sense when the *pertinent* pleadings are closed,
> and the existence of an open counterclaim in circumstances like those
> here—where the counterclaim seeks attorney's fees under an anti-
> SLAPP statute—does not preclude a Rule 12(c) motion.

*Id.*; *see also In re Outlaw Lab'y, LLP*, 463 F. Supp. 3d 1068, 1079 (S.D. Cal. 2020)

("Though Plaintiff correctly observes that a single Defendant has filed

Counterclaims . . . and Plaintiff had not answered the Counterclaims when the

Stores' motion was filed, that fact is immaterial here as the Stores' motion for

judgment on the pleadings applies *only* to Outlaw's complaint." (footnote omitted));

*Tibarom NV, Inc. v. Shell Oil Prods. U.S.*, No. 3:08-CV-00060-BES-VPC, 2008 WL

---

[1] SLAPP is an acronym for "Strategic Lawsuit Against Public Participation."  *See
Gilman v. Spitzer*, 902 F. Supp. 2d 389, 391 (S.D.N.Y. 2012).

Court No. 23-CV-09158                                                    Page 6

11404229, at *2 (D. Nev. Sept. 24, 2008) ("In this case, although a counterclaim was filed, the Court finds that the pleadings were closed for the purpose of timeliness on this motion because the motion relates solely to the claims made in the Amended Complaint.").

Here, defendant's motion purports to challenge only claims made in the amended complaint. *See* Def. Mot. at 1 (requesting "a ruling granting DESCO's motion for judgment on the pleadings and entry of final judgment in favor of DESCO on SS&C's first and second claims asserted in the Amended Complaint"); *see also* Def. Br. at 1. These two claims allege misappropriation of trade secrets in violation of the DTSA and common law misappropriation of trade secrets, respectively. *See* Am. Compl. ¶¶ 86-99. By contrast, the counterclaims allege: (1) unlawful monopolization in violation of the Sherman Antitrust Act; (2) attempted monopolization in violation of the Sherman Antitrust Act; (3) lock-in in violation of the Sherman Antitrust Act; (4) common law breach of contract; and (5) violation of California unfair competition law. *See* Countercls. ¶¶ 67-104.

Joining *Gilman* and courts in other circuits that have adopted the reasoning of *Gilman*, the court concludes that the "*pertinent* pleadings are closed" for the purposes of Rule 12(c) because defendant answered the amended complaint before filing the instant motion. *See Gilman*, 902 F. Supp. 2d at 394 n.3. That plaintiff had not yet answered the counterclaims is immaterial because defendant's motion relates solely to the trade secrets claims in the amended complaint and does not concern the antitrust, breach of contract or unfair competition counterclaims. *See*

*Textron Sys. Corp. v. Barzan Aeronautical LLC*, No. 1:23-CV-02828-JRR, 2024 WL 4135425, at \*8 (D. Md. Sept. 10, 2024) ("[T]he court is persuaded that it is fair . . . and appropriate to consider the 12(c) Motion because the pleadings have closed as to . . . the only claim[s] for which [defendant] seeks Rule 12(c) judgment."). Accordingly, defendant's motion is ripe for disposition.

## II.   Misappropriation of trade secrets

### A.   DTSA

#### 1.   Legal framework

To state a claim for trade secret misappropriation under the DTSA, "a plaintiff must plausibly allege that (1) it possessed a trade secret, and (2) the defendant misappropriated the trade secret." *Medidata Sols., Inc., v. Veeva Sys. Inc.*, No. 17 CIV. 589 (LGS), 2018 WL 6173349, at \*3 (S.D.N.Y. Nov. 26, 2018); *see* 18 U.S.C. § 1836.

The DTSA defines misappropriation as the:

> acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or . . . disclosure or use of a trade secret of another without express or implied consent by a person who . . . used improper means to acquire knowledge of the trade secret.

18 U.S.C. § 1839(5).

The DTSA definition of "improper means" includes "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means" but expressly excludes "reverse

engineering, independent derivation, or any other lawful means of acquisition." *Id.* § 1839(6).

"The DTSA, therefore, contemplates three theories of liability: (1) acquisition, (2) disclosure, or (3) use." *Opternative, Inc. v. JAND, Inc.*, No. 17 CIV. 6936 (JFK), 2019 WL 624853, at *6 (S.D.N.Y. Feb. 13, 2019) (internal quotation marks omitted) (citation omitted); *Integro USA, Inc. v. Crain*, No. 19-CV-8752 (JPO), 2019 WL 6030100, at *2 (S.D.N.Y. Nov. 14, 2019). "The DTSA's definition of 'use' includes any effort to avail oneself of a trade secret." *Onyx Renewable Partners L.P. v. Kao*, No. 22-CV-3720 (RA), 2023 WL 405019, at *5 (S.D.N.Y. Jan. 25, 2023); *Converged Compliance Sols., Inc. v. XOP Networks, Inc.*, No. 21-CV-5482 (PGG) (OTW), 2024 WL 4665114, at *9 (S.D.N.Y. Sept. 25, 2024).

But to allege misappropriation adequately, a plaintiff is required to allege more than just "circumstantial datapoints . . . [which] make its allegations possible, but not plausible." *SS&C Techs. Holdings, Inc. v. Arcesium LLC* ("*Arcesium*"), No. 22-CV-02009 (TMR-OTW), 2024 WL 5186530, at *4 (S.D.N.Y. Dec. 20, 2024) (alterations in original) (quoting *Ad Lightning Inc. v. Clean.io, Inc.*, No. 19-CV-7367 (JPO), 2020 WL 4570047, at *3 (S.D.N.Y. Aug. 7, 2020)).

At this stage, a misappropriation claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (2009). Absent evidence of a "concrete link" or other facts that give rise to a "plausible inference" of misappropriation, a plaintiff's allegations are "merely

consistent with," and thereby do not establish, misappropriation. *Ad Lightning*, 2020 WL 4570047, at \*3-4 (quoting *Iqbal*, 556 U.S. at 678); *Arcesium*, 2024 WL 5186530, at \*4.

### 2.    Analysis

This Court has concluded that plaintiff pleaded adequately the existence of actionable trade secrets. *See DESCO*, 2025 WL 1591012, at \*14-15. For that reason, the court will consider only the question of whether defendant pleaded adequately defendant's misappropriation of those trade secrets.

Plaintiff alleges three acts of misappropriation: (1) development of Geneva-derived applications; (2) use and licensing of Geneva-derived applications; and (3) participation in Arcesium's misappropriation of Geneva trade secrets. *See* Am. Compl. ¶ 63; Pl. Br. at 3-4. The court will consider each in turn.

### a.    Development

Plaintiff alleges that defendant "secretly developed a suite of software applications designed to enhance and optimize its use of Geneva." Am. Compl. ¶ 64. According to plaintiff, the Geneva-derived applications, or "DESCO Applications," "were derived from, and used, Geneva trade secrets." *Id.* ¶ 65. Such trade secrets include "Geneva loader formats, RSL files, . . . Geneva binaries," "Geneva's data schema," "data model and associated accounting functionality" and "accounting parameters." *Id.*

The only concrete fact pleaded in support of the development-related allegations is that DESCO's "data warehouse application mirrored many of the

fields and attributes in Geneva's data model for complex asset classes such as

bonds, swaps, credit facilities, asset backed securities, futures and options, among

others."[2]  *Id.*

Courts in this district have declined to draw a reasonable inference of

misappropriation where a plaintiff alleged that "general financial terms" that

appeared in plaintiff's product appeared also in defendant's competing product.  *Inv.*

*Sci., LLC v. Oath Holdings Inc.*, No. 20 CIV. 8159 (GBD), 2021 WL 3541152, at *5

(S.D.N.Y. Aug. 11, 2021); *see also Exceed Holdings LLC v. Chi. Bd. Options Exch.*

*Inc.*, No. 17-CV-8078 (RA), 2018 WL 4757961, at *5 (S.D.N.Y. Sept. 30, 2018) ("It is

simply insufficient to allege that [defendant's] products utilized general strategies

that are publicly available without providing any explanation as to what aspects of

---

[2] Plaintiff does not define "fields" or "attributes."  *See* Am. Compl. ¶ 65.  Merriam-
Webster defines "field" as "a particular area (as of a record in a database) in which
the same type of information is regularly recorded."  *Field*, Merriam-Webster Online
Dictionary, https://www.merriam-webster.com/dictionary/field (last visited Feb. 6,
2026); *see also Field*, Oxford English Dictionary,
https://www.oed.com/dictionary/field_n1?tl=true#4418168 (last visited Feb. 6, 2026)
("Any one of a number of places where a user is expected to enter a single item of a
particular type of data; an item of such data; *esp.* one in a database record.").

The same source defines "attribute" as "a quality, character, or characteristic
ascribed to someone or something."  *Attribute*, Merriam-Webster Online Dictionary,
https://www.merriam-webster.com/dictionary/attribute (last visited Feb. 6, 2026);
*see also Attribute*, Oxford English Dictionary,
https://www.oed.com/dictionary/attribute_n#33986213 (last visited Feb. 6, 2026) ("A
quality or character ascribed to any person or thing . . . .").

It is a plaintiff's burden to establish in its pleadings definitions for specialized terms
such as database "fields" and "attributes."  A plaintiff's failure to do so does not
doom its claims automatically, but it does prevent the court from concluding that
the presence of such elements in a secondary application constitutes
misappropriation in the instant case.

[plaintiff's] proprietary information were incorporated.  On these allegations, the Court cannot infer that [defendant's] products were made possible by virtue of [trade secret misappropriation]."); *Rodney v. United Masters*, No. 21 CV 5872 (DG)(LB), 2023 WL 2184865, at *4 (E.D.N.Y. Feb. 10, 2023).  The "mirror[ing]" of general financial terms such as "bonds, swaps, credit facilities, asset backed securities, [and] futures and options" amount to mere "circumstantial datapoints . . . [that] make [plaintiff's] allegations possible, but not plausible." *Ad Lightning*, 2020 WL 4570047, at *3.

The same is true of the allegations that the DESCO Applications "used" Geneva integration technology that was "essential to allow the [DESCO] Applications to load data into and extract data from Geneva."  Am. Compl. ¶ 65. Such conclusory allegations are undermined further by the fact that the purpose of Geneva is to "serve[] as a single source of consolidated data that provides a comprehensive, accurate, and timely view of portfolio data across an entire firm." *Id.* ¶ 18.  In other words, all customers of Geneva would be loading data into and receiving data from Geneva.  That the DESCO Applications "enhance and optimize" this function does not raise a reasonable inference that DESCO misappropriated Geneva trade secrets, especially where DESCO was authorized under the MA "to use a third-party service provider (like Arcesium) to provide certain services related to Geneva." *Id.* ¶ 50.

Courts in this district have drawn a reasonable inference of misappropriation where a plaintiff alleged that defendant's product contained not only similar

functionality but also features that were unique and the focus of confidential research and development efforts. *See Medidata*, 2018 WL 6173349, at *4 (concluding that allegations of software misappropriation were plausible where defendant's products contained "specific features and functionality that had been the focus of [plaintiff's] confidential research and technology initiatives"). Because similar allegations are absent here and plaintiff fails to plead that "reverse engineering, independent derivation, or any other lawful means of acquisition" were not at play, 18 U.S.C. § 1839(6)(B), plaintiff in turn fails to raise a reasonable inference of misappropriation with respect to the development of the DESCO Applications.

Plaintiff's development-related allegations fail as a matter of law. Defendant's motion is granted as to this point.

### b.    Licensing

Plaintiff alleges that "[s]ince 2015, [DESCO] has licensed to Arcesium, and Arcesium has continued to use, the [DESCO] Applications which . . . are derived from and use Geneva trade secrets." Am. Compl. ¶ 70a. Moreover, "[a]fter the HRA expired on January 10, 2020, [DESCO] renewed its license of the [DESCO] Applications to Arcesium . . . ." *Id.*

However, plaintiff's failure to plausibly allege misappropriation in the development of the DESCO Applications prevents the court from concluding that the licensing of the DESCO Applications to Arcesium constituted a further misappropriation of Geneva trade secrets. *See supra* Section II.A.2.a; *see also Free*

*Country Ltd. v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016) ("[U]nder the DTSA, a party must show 'an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty.'" (citation omitted)).

Nor does plaintiff allege that DESCO misappropriated trade secrets to augment the DESCO Applications before the 2020 renewal of the HRA such that the renewal would constitute its own act of "use," "acquisition" or "disclosure" of Geneva trade secrets. Rather, these allegations are directed to *Arcesium's* conduct. *See* Am. Compl. ¶ 70a. ("During the term of the HRA, *Arcesium* used its access to Geneva trade secrets, including for example Geneva's data schema and data model, to further enhance and improve the Geneva-Derived Applications." (emphasis supplied)). Any role that DESCO played in Arcesium's development of competing software do not go to licensing and are addressed below. *See infra* Section II.A.2.c.

Accordingly, the court concludes that plaintiff's licensing-related allegations fail as a matter of law. Defendant's motion is granted as to this point.

### c.     Participation in Arcesium's alleged misappropriation of trade secrets

Plaintiff alleges that DESCO "assisted Arcesium in enhancing and commercializing both the Geneva-derived technology that [DESCO] licensed to Arcesium and new technology that Arcesium (with [DESCO's] support and

approval) developed using Geneva trade secrets, all the while feigning to promote and sell Geneva when the ultimate plan was to take customers from Advent." Am. Compl. ¶ 63. Specifically, plaintiff alleges that DESCO "maintained close oversight over Arcesium's development of its new accounting engine, including detailed review of budgets and regular updates and reports." *Id.* ¶ 70b.

Plaintiff alleges also that "Arcesium . . . used Geneva trade secrets to develop an interface application between the Arcesium platform and Geneva" and that DESCO "participated in, approved, and benefitted from Arcesium's development of the Interface Application, in part because [DESCO] is one of the Arcesium customers that uses the Interface Application." *Id.* ¶ 70c.

As an initial matter, this Court concluded in a separate case with substantial factual overlap that SS&C failed to plausibly allege that Arcesium misappropriated Geneva trade secrets. *See Arcesium*, 2024 WL 5186530, at \*8-13. But even assuming that Arcesium had misappropriated Geneva trade secrets in its development of the accounting engine and interface application, plaintiff's allegations vis a vis DESCO do not meet the threshold for plausibility.

With respect to the development of the accounting engine, plaintiff's allegations of DESCO's "close oversight" by means of "detailed review of budgets and regular updates and reports" are inadequate. *See* Am. Compl. ¶ 70b. Plaintiff does not plead that information about the misappropriation of Geneva trade secrets would have been revealed through such oversight, nor does plaintiff describe the

nature of the documents and communications beyond general terms like "pricing proposals" and "technology roadmaps." *See* Am. Compl. ¶¶ 71-73.

Plaintiff does not allege facts sufficient to raise a reasonable inference that DESCO enabled Arcesium's alleged misappropriation of Geneva trade secrets. It is insufficient to state merely that DESCO was aware of plans to develop a competing accounting engine and to persuade Geneva customers to migrate to that engine without including a description of use, acquisition or disclosure of trade secrets by Arcesium. And plaintiff may not rely on DESCO's supposed development-related misappropriation because such allegations are not pleaded adequately. *See supra* Section II.A.2.a.

Even if the development of competing software violated DESCO's and Arcesium's responsibilities under their licensing agreements with SS&C, that fact would support a breach of contract claim and cannot by itself constitute misappropriation of trade secrets.

Plaintiff's allegations regarding the development of the interface application fare similarly. It is inadequate to state merely that DESCO is a user of the interface application, which allows Arcesium to "remotely operate [DESCO's] instance of Geneva." Am. Compl. ¶ 70c. Without a particularized description of how this remote operation implicated DESCO in Arcesium's misappropriation of Geneva trade secrets, the existing allegations do not establish that *DESCO* engaged in misappropriation of any kind. The allegations in the amended complaint are the

kinds of "circumstantial datapoints . . . [that] make [plaintiff's] allegations possible, but not plausible." *Ad Lightning*, 2020 WL 4570047, at *3.

The same is true of plaintiff's argument that DESCO should be held responsible for Arcesium's misappropriation "because [DESCO] controlled Arcesium from its inception." Am. Compl. ¶ 72. Specifically, plaintiff alleges that

> Arcesium's key leadership, including its CEO and technology leadership, came from [DESCO]. Arcesium was and is located in the same building as [DESCO]. [DESCO] provided Arcesium with most of its initial capital and has provided a wide array of services to Arcesium, including in the HR, technology, administration and legal areas. [DESCO] has provided financial support for Arcesium, including to backstop Arcesium when it was struggling financially. [DESCO] monitored and approved key aspects of Arcesium's day-to-day business including hiring and firing of key employees, technology roadmaps and developments, and product pricing.

*Id.*

It is not sufficient to state a series of facts that are "merely consistent with" misappropriation. *Ad Lightning*, 2020 WL 4570047, at *2-4. Plaintiff is required to allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," an inference that requires "more than a sheer possibility that [the] defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Plaintiff has failed to do so here.

Involvement is not necessarily control and plaintiff has not presented an argument that DESCO misappropriated plaintiff's content by virtue of any control of Arcesium. *Cf. Hedgeye Risk Mgmt., LLC v. Dale*, No. 21-CV-3687 (ALC)(RWL), 2023 WL 6386845, at *9 (S.D.N.Y. Sept. 29, 2023) ("The mere allegation that an

individual defendant might control a corporate defendant is not sufficient to allege

liability for misappropriation as to the corporate defendant."). The court takes note

of the list of corporate activities presented by plaintiff; however, absent from the list

are allegations of DESCO's "acquisition," "disclosure" or "use" of the Geneva trade

secrets in the development of the accounting engine or interface application, let

alone supported allegations. Pursuant to the statute, plaintiff must demonstrate

that at the time of the "monitor[ing] and approv[ing] key aspects of Arcesium's day-

to-day business," DESCO "knew or had reason to know" that the Geneva trade

secrets were acquired improperly. Am. Compl. ¶ 72; 18 U.S.C. § 1839(5)(B).

For these reasons, plaintiff's participation-related allegations fail as a matter

of law. Defendant's motion for judgment on the pleadings is granted as to this

point.

### B.    State-law misappropriation claim

The requirements for stating a trade secret misappropriation claim under

New York common law "are fundamentally the same as those sustaining a claim

under the DTSA." *Kraus USA, Inc. v. Magarik*, No. 17-CV-6541 (ER), 2020 WL

2415670, at *5 (S.D.N.Y. May 12, 2020) (internal quotation marks omitted) (citation

omitted).

For "substantially the same reasons" that plaintiff fails to adequately plead a

DTSA claim, plaintiff fails also to adequately plead a claim of trade secret

misappropriation under New York law. *See Inv. Sci.*, 2021 WL 3541152, at *5

(dismissing New York law misappropriation claims where plaintiff's DTSA claims

were also dismissed).  Accordingly, defendant's motion for judgment on the pleadings is granted as to this claim.

## III.    Remaining state-law claims

In light of the failure of the DTSA claim, the court declines supplemental jurisdiction over the remaining state-law claims in the amended complaint.

Pursuant to 28 U.S.C. § 1367(c)(3), the court "'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)); *Camarda v. Snapple Distribs., Inc.*, 346 F. App'x 690, 693 (2d Cir. 2009).

"Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity,' . . . in deciding whether to exercise jurisdiction." *Kolari*, 455 F.3d at 122 (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).  "In weighing these factors, the district court is aided by the Supreme Court's additional guidance . . . that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Id.* (quoting *Cohill*, 484 U.S. at 350 n.7); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

The instant DTSA claim is the only claim in the amended complaint over which the court possesses original jurisdiction.  *See* Am. Compl. at ¶¶ 86-118; 18 U.S.C. § 1836(c); 28 U.S.C. § 1331.  And the early stage of this litigation "point[s]

toward declining to exercise jurisdiction over the remaining state-law claims."

*Kolari*, 455 F.3d at 122 (quoting *Cohill*, 484 U.S. at 350 n.7). Accordingly, plaintiff's

remaining state-law breach of contract claims are dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, defendant's motion for judgment on the pleadings

is GRANTED. Plaintiff's amended complaint is DISMISSED.

The Clerk of the Court is respectfully directed to terminate the open motion

at ECF No. 76.

SO ORDERED.


Dated: February 6, 2026
New York, New York

/s/ Timothy M. Reif
Timothy M. Reif, Judge
United States Court of International Trade
*Sitting by Designation*
United States District Court for the
Southern District of New York